**Juan Domingo VELAZQUEZ,**
**Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–06–00086–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 8, 2007.

---

Jerald Kaplan Graber, Houston, for appellants.

Eric Kugler, Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

LESLIE B. YATES, Justice.

A jury found appellant Juan Domingo Velazquez guilty of murder and assessed punishment at forty-five years' imprisonment. In three issues, appellant challenges the legal and factual sufficiency of the evidence supporting the jury's negative finding on the punishment issue of sudden passion and claims he is entitled to a new trial because the court reporter did not record some of the bench conferences during the trial. We affirm.

### BACKGROUND

Appellant shot and killed Rudolph Dorsey, an apartment complex security guard, while Dorsey was on duty on May 24, 2005. Stephanie Jones and Krystal Simmons, who, along with appellant, lived in the apartment complex, witnessed a large por-

tion of the incident. According to Jones, she heard a gunshot around 10:00 p.m. and looked out her apartment window. She saw a man she later identified as appellant get into a car and drive away quickly while screeching his tires. He drove across the street to a convenience store parking lot and stayed there in his car for five to ten minutes, after which he drove back to the apartment complex in the same erratic manner. A few minutes later, Jones looked out her window and saw appellant, who was no longer in his car, and Dorsey talking. Appellant had a gun pointed at Dorsey, who was pleading for his life. Appellant then shot Dorsey twice, backed up, and shot him four more times before running away. Jones testified that her windows were very thin and that she frequently overheard conversations outside her window. However, she neither heard nor saw any struggle or fight before appellant shot Dorsey, and she did not observe Dorsey with a weapon or using force of any kind.

Simmons also heard the first gunshot and looked out her window. She recognized appellant, and, while he was parked across the street, Simmons came out from her apartment and talked to Dorsey. Dorsey and Simmons saw appellant return to the complex and begin working on his car. Dorsey told Simmons he was going to get appellant's license plate number. After Dorsey got the information, he attempted to place a call on his cell phone. Simmons then saw appellant approach Dorsey, place a hand on him, and shoot him twice. Simmons ran back to her apartment and called 911. As Simmons ran, she heard scuffling and Dorsey begging appellant not to shoot him again, followed by several more shots. Like Jones, Simmons did not observe any physical conflict or hear any threats or insults from Dorsey before appellant shot him, and she believes she would have heard any such behavior, based on her

past experience with hearing things from her apartment.

When police arrived at the scene, Dorsey was dead. In addition to the bullet wounds, Dorsey's knees and lower leg were scraped. Police found several spent shell casings nearby as well as a wallet, watch, and flashlight. Dorsey's gun was still in its holster, although it was raised slightly because the safety straps holding it in the holster were unsnapped. Dorsey's gun was missing no bullets, and no bullet was in the chamber ready to be fired.

After appellant was arrested, he gave a videotaped statement to the police. He claimed that after he came home from work, Dorsey "confronted" him and hit him in the parking lot. Appellant became angry and went into his apartment. Appellant then discovered that his wife and children were not at home, despite the late hour, further angering him. His gun, which he had removed from his car when he first arrived in the complex, was in his pants. He went back outside his apartment, where he again encountered Dorsey, who appellant claims assaulted and pushed him. Appellant stated that because of his anger at Dorsey and his wife, "at that instant in a moment of rage," he shot Dorsey.

Appellant did not testify during the guilt/innocence phase, but he did testify during punishment. He explained that he was working on his car in the parking lot when Dorsey approached him and rudely began asking questions and eventually insulted him with racial slurs. Unlike in his statement to the police, appellant did not testify that Dorsey hit him at this point. Appellant became angry but ignored Dorsey and went into his apartment for ten to fifteen minutes, where he became further angered and frightened by his family's absence. Although he never told this to

police, according to appellant, when he returned outside, Dorsey approached him and again used racial slurs before assaulting him with a flashlight, knocking him to the ground, and kicking him. Appellant was able to get to his feet and pull out his gun, telling Dorsey not to move. Appellant claims Dorsey tried to pull out his gun, and so appellant shot him. He then said "What have I done?" and ran away.

The jury convicted appellant of murder, and this appeal followed.

## ANALYSIS

### *Sudden Passion*

█ In his first two issues, appellant claims the evidence is legally and factually insufficient to support the jury's negative finding on the issue of sudden passion. At the punishment stage of a murder trial, "the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from adequate cause." TEX. PENAL CODE ANN. § 19.02(d) (Vernon 2003). "Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed." *Id.* § 19.02(a)(2). "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1). If the defendant proves the issue by a preponderance of the evidence, the offense is reduced to a second degree felony. *Id.* § 19.02(d).

█ An attack on the legal sufficiency of the evidence to support a negative finding on an issue for which the defendant has the burden of proof involves two steps. First, we must examine the record for evidence that supports the negative finding while ignoring all evidence to the contrary. *Cleveland v. State,* 177 S.W.3d 374, 387 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd), *cert. denied,* 547 U.S. 1073, 126 S.Ct. 1774, 164 L.Ed.2d 523 (2006); *Nolan v. State,* 102 S.W.3d 231, 238 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). Second, if no evidence supports the negative finding, we must examine the entire record to determine whether it establishes the contrary proposition as a matter of law. *Cleveland,* 177 S.W.3d at 387; *Nolan,* 102 S.W.3d at 238.

█ In conducting a factual-sufficiency review of the jury's determination,[1] we do not view the evidence "in the light most favorable to the prosecution." *Cain v.*

---

1. In *Forbes v. State,* we refused to conduct a factual sufficiency review of a negative finding on sudden passion. No. 14–98–01453–CR, 2000 WL 19156, at *2 (Tex.App.-Houston [14th Dist.] Jan. 13, 2000, pet. ref'd) (not designated for publication). We noted that the Court of Criminal Appeals had not extended factual sufficiency review to any punishment issue and declined to do so ourselves "without clear guidance" from the court. *See id.* The court provided that clear guidance the next year in *Wardrip v. State,* which held that factual sufficiency review is appropriate on punishment issues involving a finding of historical fact, such as whether the defendant acted deliberately, rather than those involving a subjective prediction, such as future dangerousness. 56 S.W.3d 588, 590–91 (Tex.Crim. App.2001). The sudden passion issue involves such a historical finding, i.e., whether the defendant acted with sudden passion from adequate cause. Thus, this court, as have other courts, has held that factual sufficiency review is available for a negative finding on sudden passion. *See Reyes v. State,* No. 14–04–00805–CR, 2005 WL 2787220, at *1–2 (Tex.App.-Houston [14th Dist.] Oct. 27, 2005, pet. ref'd) (mem. op; not designated for publication); *Hernandez v. State,* 127 S.W.3d 206, 211–12 & n. 2 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd) (collecting cases); *see also Harrell v. State,* 65 S.W.3d 768, 772 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd) (conducting factual sufficiency review of negative finding on punishment issue of voluntary release in a safe place in a kidnapping case). Therefore, we will conduct a factual sufficiency review.

*State,* 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). Rather, we look at all evidence in a neutral light and will reverse a conviction only if (1) the evidence of guilt is so weak that the jury's verdict seems clearly wrong and manifestly unjust or, (2) considering conflicting evidence, the jury's verdict, though legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *Watson v. State,* 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006). However, it is not enough that we may harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence. *Id.* at 417. We cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Id.* Nor can we declare that a conflict in the evidence justifies a new trial simply because we may disagree with the jury's resolution of that conflict. *Id.* Rather, before ordering a new trial, we must first be able to say, with some objective basis in the record, that the great weight and preponderance of the (albeit legally sufficient) evidence contradicts the jury's verdict. *Id.* Our evaluation should not intrude upon the fact-finder's role as the sole judge of the weight and credibility given to the evidence and any witness's testimony. *Cain,* 958 S.W.2d at 407. In conducting our review, we must also discuss the evidence appellant claims is the most important in allegedly undermining the jury's verdict. *Sims v. State,* 99 S.W.3d 600, 603 (Tex. Crim.App.2003).

 Appellant claims he shot Dorsey in a moment of rage when Dorsey tried to pull his gun after racially insulting and assaulting him. In support of his story that he and Dorsey fought before the shooting, appellant points to the disarray of the crime scene, the scrapes on Dorsey's legs, and the position of Dorsey's gun in its holster at the crime scene. Ap-

pellant also emphasizes that none of the witnesses saw the entire event and that he is the only direct witness to his state of mind. Even though Jones and Simmons did not see the entire event, between the two of them they saw most of it, and their accounts consistently contradict appellant's story. Both testified that they heard no physical or verbal altercation and that appellant shot Dorsey while Dorsey was pleading for his life rather than assaulting appellant. Simmons said she heard scuffling only after the first round of shots appellant fired at Dorsey, and Dorsey never fired his weapon or even drew it completely from its holster. This evidence all relates to whether appellant's actions were caused by sudden passion from adequate cause, and the jury was free to assess the credibility of the witnesses and choose between this conflicting evidence. *See Trevino v. State,* 157 S.W.3d 818, 822 (Tex.App.-Fort Worth 2005, no pet.) (noting that "the jury was free to make its own determination of appellant's credibility and reject appellant's version of events if it did not believe he was telling the truth," including on the issue of whether the deceased pulled a gun first, causing appellant to shoot her in sudden passion); *Dudley v. State,* 992 S.W.2d 565, 569 (Tex.App.-Texarkana 1999, no pet.) (finding factually sufficient evidence to support negative finding on sudden passion issue based on conflicting evidence regarding the confrontation). Further, appellant's statement to the police differed substantially from his punishment-phase testimony, both in terms of when Dorsey allegedly began the physical assault and Dorsey's use of weapons and racial insults, giving the jury further reason to disbelieve appellant. *See Hernandez,* 127 S.W.3d at 214 (noting that "appellant's changing story about the circumstances of the killing" gave the jury reason to reject defendant's claims of sudden passion). Finally, appel-

lant testified that his anger was caused in large part by his wife and family not being home so late at night.[2] Provocation by others than the deceased does not meet the definition of sudden passion. *See id.* at 213; *Saldivar v. State,* 980 S.W.2d 475, 506 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd).

We conclude that some evidence presented at trial supports the jury's negative finding on the sudden passion issue, and thus the evidence is legally sufficient. *See Cleveland,* 177 S.W.3d at 387, 390; *Nolan,* 102 S.W.3d at 238. Further, based on a neutral review of all the evidence, the evidence supporting the jury's finding is not so weak as to render the verdict manifestly unjust or against the great weight and preponderance of the evidence. Thus, the evidence is also factually sufficient to support the verdict. *See Watson,* 204 S.W.3d at 414-15. We overrule appellant's first and second issues.

### Failure to Record Bench Conferences

■ In his third issue, appellant contends he is entitled to a new trial because the court reporter did not record all of the bench conferences. Texas Rule of Appellate Procedure 13.1 provides that the official court report must, "unless excused by agreement of the parties, attend court sessions and make a full record of the proceedings." Appellant claims he was denied a meaningful appeal because the failure to record several bench conferences[3] means any error in the trial court's rulings on those issues was not preserved. The State responds that this issue is not preserved for review because appellant did not object to the lack of a court reporter at these conferences. We agree.

Appellant relies on *Tanguma v. State,* 47 S.W.3d 663, 673-74 (Tex.App.-Corpus Christi 2001, pet. ref'd) for the proposition that failure to record bench conferences without agreement of the parties is reversible error. However, the Court of Criminal Appeals expressly disapproved of *Tanguma* in *Valle v. State,* in which it held that a party must object in the trial court to preserve any appellate complaint about the failure to record bench conferences. 109 S.W.3d 500, 508-09 (Tex.Crim. App.2003) (noting also "we disapprove of *Tanguma's* holding that the current rule dispenses with the requirement of an objection to preserve error"); *see also Rodriguez v. State,* No. AP–74,399, 2006 WL 827833, at *6 (Tex.Crim.App. Mar.29, 2006) (not designated for publication) ("Rule 13.1 ... does not relieve a party of its obligation to object to preserve error."); *Elec. Bankcard Sys., Inc. v. Retriever Indus., Inc.,* No. 14–04–00452–CV, 2005 WL 3435294, at *2 & n. 8 (Tex.App.-Houston [14th Dist.] Dec. 15, 2005, no pet.) (mem.op.) (stating that "the complaining party must still object to the [failure to record bench conferences] to preserve error" and noting that the Corpus Christi Court of Appeals has disavowed *Tanguma* in light of *Valle,* citing *State v. Herndon,* 115 S.W.3d 231, 234 (Tex.App.-Corpus Christi 2003, pet. granted)).[4] Be-

---

**2.** In fact, appellant answered "Yes" in response to the question, "Most of your anger-I guess all of your anger was because of the situation with your wife, wasn't it?"

**3.** Although appellant suggests there were five unrecorded bench conferences, the record reveals only one conference that could even potentially be significant. For this conference, the trial court called the parties to the bench during testimony on its own, rather than in response to any objection or request from a party. The context does not reveal the substance of this discussion. For the other four, two were in fact recorded, and the other two, based on the context, appear to have dealt with the timing of taking breaks.

**4.** Appellant argues that *Valle* does not apply because he was unaware that the conferences were not being recorded. Even assuming such an exception should be recognized, ap-

cause appellant did not so object, any error is waived, and we overrule his third issue.

We affirm the trial court's judgment.

pellant failed to cite any evidence to support his factual assertion that he was unaware, and he failed to develop such a record with a motion for new trial.