Affirmed and Memorandum Opinion filed May 28, 2009








Affirmed and Memorandum Opinion filed May 28, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00370-CR

____________

 

SHERWOOD THOMAS GOBERT, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 351st
District Court

Harris County, Texas

Trial Court Cause No. 1109292

 



 

M E M O R A N D U M   O P I N I O N

A jury found appellant, Sherwood Thomas Gobert, guilty of
murder and assessed his punishment at twenty-two years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.  In two
issues, appellant contends (1) the trial court committed reversible error when
it refused to allow him to present evidence of his state of mind during the
punishment phase, and (2) the evidence was factually insufficient to support
the jury=s negative finding
on the sudden passion issue.  We affirm.








                        I. 
FACTUAL AND PROCEDURAL BACKGROUND

In March 2007, appellant and his common-law wife, Nancy
Gonzalez, had been together for six years and had a two-year old son, Isaiah. 
Although they had been separated for several months, they were making efforts
to reconcile.  Gonzalez and the complainant, Jason Wheeler, had known each
other for approximately six years.

In September 2006, appellant first met the complainant when
he appeared at appellant=s apartment and verbally threatened him. 
Following the confrontation, Gonzalez told appellant that she and the
complainant were friends.  In December 2006, the complainant showed up at
appellant=s apartment again with four other men.  Two of the men
climbed up to his balcony and began beating on his window while the complainant
stood at the front door with a gun.  In January 2007, appellant came home from
work and found Gonzalez in her car with the complainant.  Gonzalez believed
that appellant was afraid of the complainant.  She testified that the
complainant did not approve of appellant, and she believed that appellant was
probably jealous of her relationship with the complainant.  According to
appellant, he never suspected that Gonzalez and the complainant were
romantically involved and was unaware that they spent time together.  At trial,
Gonzalez also denied ever dating the complainant.[1]








On March 22, 2007, appellant had an argument with Gonzalez
before he left for work at approximately 11:00 p.m.[2] 
Later, when he was unable to reach Gonzalez on the phone, appellant left work
early and went home at approximately 3:00 a.m.  Appellant testified that when
he went to the apartment, he took his gun because of the high crime rate in the
neighborhood and complainant=s previous threats.

When he entered the bedroom, appellant saw a man in bed
with Gonzalez and their son.  He repeatedly testified that he was not angry or
upset when he discovered that it was the complainant, but rather hurt and
confused.  According to appellant, when the complainant jumped out of the bed
and came toward him, he fired a warning shot.  Appellant testified that when
the complainant then made an aggressive move toward him, he shot him. 
Appellant went to the living room and put the gun in his mouth but did not pull
the trigger because he saw his son looking at him as Gonzalez carried him out
of the apartment.

At the conclusion of trial, the trial court submitted the
jury charge which included an instruction on self-defense.  The jury found
appellant guilty of murder and assessed his punishment at twenty-two years= confinement. 
Appellant timely filed this appeal.

II.  ANALYSIS

In his first issue, appellant contends the trial court
committed reversible error when it excluded certain testimony regarding his
state of mind aimed at supporting the special issue of sudden passion in the
punishment phase of the trial.  We begin by considering whether appellant
properly preserved this argument for our review.








To preserve an issue for appeal premised on the trial court=s exclusion of
evidence, the proponent must object, obtain a ruling from the trial court (or
object to the trial court=s refusal to rule), and make an offer of
proof.  Tex. R. App. P. 33.1(a);
Tex. R. Evid. 103(a)(2); Roberts
v. State, 220 S.W.3d 521, 532 (Tex. Crim. App. 2007).  Error may not be
predicated upon a ruling that excludes evidence unless a substantial right of a
party is affected and the substance of the evidence was made known to the court
by the offer of proof, or was apparent from the context within which the
questions were asked.  Tex. R. Evid. 103(a)(2);
Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998).  To adequately
and effectively preserve error, an offer of proof must show the nature of the
evidence specifically enough so that the reviewing court can determine its
admissibility.  In re N.R.C., 94 S.W.3d 799, 806 (Tex. App.CHouston [14th
Dist.] 2002, pet. denied).  Rather than mandating formal proof, however, the
Rules require only a Ashort, factual recitation of what the
testimony would show is sufficient >evidence= to preserve an
issue for appeal.@  Id.  Upon making such an offer,
defense counsel must describe the actual content of the testimony and not
merely comment on the reasons for it.  Love v. State, 861 S.W.2d 899,
900‑01 (Tex. Crim. App. 1993); In re N.R.C., 94 S.W.3d at 806.

During the punishment phase, defense counsel attempted to
elicit testimony from appellant concerning his state of mind when he shot the
complainant.  After the trial court sustained the prosecutor=s objections to
the relevance of the testimony, the following exchange occurred at the bench:

Defense Counsel:   Judge, at this
point, I=ve got to get into the evidence all
about what he was thinking at the time to show sudden passion or possible
sudden passion as it relates to this.  It doesn=t have to be just at the guilt/innocence phase.  It
can also B 

The Court:             You=ve already asked him all this
stuff.

Defense Counsel:   Judge, if you=re telling me that I have a right
to a charge on that, then I=m fine with B

The Court:             I=m not saying one way or another.

Defense Counsel:   Then I need to
be able to get through and get to it.  I=ve got to ask these questions unless the Court has already
said that I=ve covered that.  I don=t have any other option.

The Court:             You=ve already asked him all this
stuff.

Defense Counsel:   Well, Judge,
again, I just want to clarify.  Your charge does not have sudden passion and I
want to make sure I have the opportunity, as the law allows me, to seek the
evidence during the punishment phase.  I don=t have to go and say that we are going by whatever happened
in the guilt-innocence.  I can do it right now.








Prosecutor:            Judge,
unless he=s going to admit to purgering [sic]
himself, he got on the stand saying he wasn=t upset, didn=t think they were having an affair, he was only worried
about defending himself. So, unless he=s going to get up there and admit to perjury in the
case-in-chief, I don=t see how he can ever get B

Defense Counsel:   I haven=t B 

The Court:             Sudden
passion requires an intentional killing.

Defense Counsel:   I didn=t understand you.

The Court:             In order to
get to sudden passion, they have to intentionally kill somebody.

Defense Counsel:   He=s been convicted of it.

The Court:             He=s denied it.

Defense Counsel:   Well, what a
jury B or what an appeals court may find
in terms of what we do here on punishment in terms of establishing sudden
passion versus what he felt prior to that, we can have alternative theories. 
You=re telling me I can=t have an alternative theory?

The Court:             I=m saying if you can=t think of a new question to ask B you=ve already asked what he was thinking all the way B every step of the way through
this.

Defense Counsel:   I=ll ask another question, but that=s where I=m going.

The Court:             Well, I
understand that, but you just can=t ask the same question you=ve already asked.  It=s already in front of the jury.








There is no indication in the record that defense counsel
either objected to the trial=s court=s refusal to allow
him to elicit the testimony in question or secured an adverse ruling regarding
the admissibility of such evidence.  Further, to preserve error, the proponent
must make an offer of proof conveying the substance of the proffered evidence. 
See Tex. R. Evid. 103(a)(2);
Roberts, 220 S.W.3d at 532.  Here, defense counsel did not provide the
trial judge with a concise statement regarding the content of the testimony he
proposed to elicit from appellant; instead, he merely informed the trial judge
of his reason for asking the questions.  Appellant conceded as much in his
brief, stating that A[a]fter this exchange, counsel for the
appellant basically dropped his attempt to elicit testimony that would have
supported the >sudden passion= issue.@  As such,
appellant failed to preserve error.  Issue one is overruled.[3]

In his second issue, appellant contends the evidence is
factually insufficient to support the jury=s negative finding
on the sudden passion issue.  He argues that the facts of this case constitute
a Atextbook case@ of sudden passion
and that the jury=s finding was clearly wrong and unjust and
against the great weight and preponderance of the evidence.








Murder is a first degree felony.  Tex. Penal Code Ann. ' 19.02(c) (Vernon
2003).  However, A[a]t the punishment stage of trial, the
defendant may raise the issue as to whether he caused the death under the
immediate influence of sudden passion arising from an adequate cause.@  Id. ' 19.02(d).  A>Sudden passion= means passion
directly caused by and arising out of provocation by the individual killed ...
which passion arises at the time of the offense and is not solely the result of
former provocation.@  Id. ' 19.02(a)(2).  A>Adequate cause= means cause that
would commonly produce a degree of anger, rage, resentment, or terror in a
person of ordinary temper, sufficient to render the mind incapable of cool
reflection.@  Id. ' 19.02(a)(1).  If
the defendant proves the issue in the affirmative by a preponderance of the
evidence, the offense is reduced to a second degree felony.  Id. ' 19.02(d).

In conducting a factual sufficiency review of the jury=s determination,
we do not view the evidence Ain the light most favorable to the
prosecution.@  Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006); Velazquez v. State, 222 S.W.3d 551, 554 (Tex. App.CHouston [14th
Dist.] 2007, no pet.).  Rather, we look at all evidence in a neutral light and
will reverse a conviction only if (1) the evidence of guilt is so weak that the
jury=s verdict seems
clearly wrong and manifestly unjust, or (2) considering conflicting evidence,
the jury=s verdict, though
legally sufficient, is nevertheless against the great weight and preponderance
of the evidence.  Watson, 204 S.W.3d at 414B15.  However, it
is not enough that we harbor a subjective level of reasonable doubt to overturn
a conviction that is founded on legally sufficient evidence.  Id.  at
417.   We cannot conclude that a conviction is Aclearly wrong@ or Amanifestly unjust@ simply because,
on the quantum of evidence admitted, we would have voted to acquit had we been
on the jury.  Id.  Nor can we declare that a conflict in the evidence justifies
a new trial simply because we may disagree with the jury=s resolution of
that conflict.  Id.  Rather, before ordering a new trial, we must first
be able to say, with some objective basis in the record, that the great weight
and preponderance of the (albeit legally sufficient) evidence contradicts the
jury=s verdict.  Id. 
Our evaluation should not intrude upon the fact‑finder=s role as the sole
judge of the weight and credibility given to the evidence and any witness=s testimony.  Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  In conducting our
review, we must also discuss the evidence appellant claims is the most
important in allegedly undermining the jury=s verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).








In support of his position that the evidence does not
support the jury=s negative finding on the issue of sudden
passion, appellant relies on the following evidence: (1) after worrying about
his argument with Gonzalez earlier that evening, appellant came home to find
the complainant in bed with Gonzalez and their son; (2) appellant suspected
that Gonzalez and the complainant had an affair; (3) the complainant had
threatened and humiliated appellant in the past; and (4) after shooting the
complainant, appellant put the gun in his own mouth but changed his mind after
seeing his son=s face.  Gonzalez, however, testified that  appellant
was  jealous of her relationship with the complainant prior to the shooting. 
Further, as appellant acknowledges, the incidents during which the complainant
threatened him also occurred prior to the night in question.  Sudden passion
must arise at the time of the offense and cannot result solely from former
provocation.  Hernandez v. State, 127 S.W.3d 206, 213 (Tex. App.CHouston [1st
Dist.] 2003, pet. ref=d).  Moreover, appellant=s assertion that
he suspected that Gonzalez had an affair with the complainant is contradicted
by his own testimony that he never suspected Gonzalez and the complainant were
romantically involved.








At trial, appellant argued that he shot the complainant
because he felt threatened and was in fear for his life.  However, fear,
standing alone, does not raise the issue of sudden passion.  Smith v. State,
721 S.W.2d 844, 854 (Tex. Crim. App. 1986).  Even an individual who fears for
his life may nevertheless cooly and deliberately kill his assailant.  See
Fry v. State, 915 S.W.2d 554, 559 (Tex. App.CHouston [1st
Dist.] 1995, no pet.).  Further, appellant repeatedly testified that he was not
angry or upset when he discovered the complainant in bed with Gonzalez, but was
instead hurt and confused.  This evidence does not evince sudden passion. 
Additionally, even if the trial court had permitted appellant to testify in
support of a sudden passion defense, such testimony would have differed
substantially from his guilt-innocence phase testimony and the jury could have
disbelieved him.  See Velazquez, 222 S.W.3d at 555 (concluding appellant=s statement to
police that differed substantially from his punishment phase testimony gave
jury reason to disbelieve appellant); Hernandez, 127 S.W.3d at 214
(noting Aappellant=s changing story
about the circumstances of the killing@ gave jury reason
to reject defendant=s claims of sudden passion).

Based on a neutral review of all the evidence, we find the
evidence supporting the jury=s negative finding on the sudden passion
issue is not so weak as to render the verdict manifestly unjust or against the
great weight and preponderance of the evidence.  We conclude the evidence is
factually sufficient to support the verdict.  See Watson, 204 S.W.3d at
414B15.   We overrule
appellant=s second issue.

                                                 III. 
CONCLUSION

We affirm the judgment of the trial
court.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

 

Panel consists of
Justices Hedges, Anderson, and Seymore.

Do Not Publish C Tex. R. App. P.
47.2(b).









[1]  However, in her written statement to police,
Gonzalez stated that she began dating the complainant while going through her
separation from appellant.





[2]  As a direct care staff member at Shelton Harbor Residential
Treatment Center, appellant was responsible for supervising children between
the ages of 12 and 18.  He worked the graveyard shift from 12:00 a.m. to 7:00
a.m.





[3] Appellant also argues that the trial court=s refusal to permit the testimony was error Aof a constitutional dimension@ because it deprived him of his right to present a
complete defense as guaranteed by the Compulsory Clause of the Sixth Amendment,
the Fourteenth Amendment, and under Article I, sections 9, 10, and 19 of the
Texas Constitution.  A complaint on appeal must correspond with the objection
made at trial.  See Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App.
2002); Rothstein v. State, 267 S.W.3d 366, 373B74 (Tex. App.CHouston [14th Dist.] 2008, pet. ref=d).  A reviewing court will not consider errors, even
of constitutional magnitude, not called to the trial court=s attention.  Broxton v. State,
909 S.W.2d 912, 918 (Tex. Crim. App. 1995).  Here, defense counsel argued at
trial that his inquiry into appellant=s
state of mind at the time of the shooting was relevant to support a sudden
passion instruction.  However, he did not argue any federal or state
constitutional claims.  Thus, even if the trial court had erred in excluding
the testimonyCwhich we conclude it did notCappellant still failed to preserve error on this issue
because his claim at trial varies from his complaint on appeal.  See id. (concluding
appellant failed to preserve error where his complaint on appeal asserting
constitutional violations did not comport with his trial objection based on
state evidentiary rule); see also Collins v. State, Nos. 12-03-00197-CR,
12-03B00198-CR, 2004 WL 1192609, at *2 (Tex. App.CTyler May 28, 2004, no pet.) (mem. op., not designated
for publication) (concluding appellant=s
complaint on appeal that trial court erroneously excluded evidence supporting jury
instruction on sudden passion during punishment phase in violation of his due
process rights under United States and Texas Constitutions was not preserved
for review where appellant failed to argue federal or state constitutional
claims at trial).