

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00200-CR

KRISTIN VANWINKLE                                    APPELLANT

V.

THE STATE OF TEXAS                                        STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In three issues, appellant Kristin Vanwinkle appeals her conviction for obtaining or possessing hydrocodone through the use of a fraudulent prescription.[2] She argues that the trial court erred by excluding evidence that she tested negative for drugs, by denying her discovery of a witness's

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Health & Safety Code Ann. § 481.129(a)(5) (Vernon 2010).

fingerprints, and by failing to make a reporter's record of bench conferences. We affirm.

## Background Facts

**The facts as told by the State's witnesses**

Candice Porter worked as a pharmacy technician at a Kroger store in Frisco. One evening in August 2007, appellant, who regularly visited the pharmacy and who Porter knew by sight, came to the pharmacy's drop-off window. Pharmacist Lily Yang was working with Porter that night and also saw appellant in the store.

Appellant told Porter that she needed some medicine because her son had been in a baseball accident, and she handed Porter a Lortab[3] prescription that contained the name of Dr. Neil Jacobson, was dated 8-22-07, and was written for "Austin Van Winkle."[4] Porter initialed the prescription, which contained an old, incorrect address for Dr. Jacobson's office. She then printed out a label for the prescription bottle. After the bottle had been filled, appellant picked it up and signed a document to indicate that she had received it.[5]

---

[3]According to testimony, Lortab is a pain medicine that contains codeine, acetaminophen, and hydrocodone; hydrocodone is a controlled substance.

[4]Yang said that she heard appellant tell the same baseball accident story.

[5]On the same document that Porter says appellant signed, Porter wrote "mom" to indicate that appellant had picked up the medicine for Austin, her son.

The transaction between Porter and appellant lasted for about fifteen minutes. After appellant received the bottle, she spoke with Yang about how Austin, her son, could take the medicine. According to Yang, the only people around the pharmacy at the time of appellant's visit were her, appellant, and Porter.

After appellant left the pharmacy area, one of Kroger's customer service employees, Debra Smith, called the pharmacy because Smith suspected that appellant was shoplifting. Yang became suspicious about the prescription and wanted to verify it.

The next day, a pharmacy employee called Dr. Jacobson's office and learned that the prescription had been forged. On the request of Dr. Jacobson's office, Yang called the police to tell them about the forgery.

Days later, Frisco Police Department Sergeant Jay Reim went to Kroger to investigate and noticed that another officer was already there and was talking to appellant, who had coincidentally returned to the store. Sergeant Reim took only a photocopy of the prescription that Porter had received because it is Kroger's policy to retain original prescriptions and he did not believe that a fingerprint analysis would be useful since the prescription was likely touched by many people. He met with appellant a few days later, and the police eventually got a warrant and arrested her.

3

**The facts as told by appellant's witnesses**

Appellant called Kroger store manager Donny Pauling as a witness to discredit Porter's and Yang's testimony by establishing that no one was working in customer service on the night that appellant allegedly obtained the prescription. Pauling said that Smith (who, according to Porter, made the call from customer service about appellant's alleged shoplifting) was working on the night in question, but Pauling conceded that Smith's time card said that she was working near the self-checkout register. Pauling explained that Smith typically worked as a customer service supervisor and that employees may work at "different places in their shift." He said that the information on Smith's time card did not mean that she did not work in customer service on the evening in question.

Appellant also presented testimony from Jimmy Chilcutt, a retired police latent fingerprint examiner. Chilcutt said that he compared appellant's fingerprints to eleven fingerprints from the prescription that appellant allegedly gave to Porter. He testified that none of the eleven fingerprints matched appellant's fingerprints. On cross-examination, Chilcutt admitted that he could not testify that appellant did not touch the prescription but only that none of the eleven fingerprints on the prescription belonged to her. Chilcutt admitted that more than three people touched the prescription before he examined it and that several fingerprints on the prescription overlapped.

4

Appellant testified that she went to Kroger about twice a week in 2007. She said that on the night in question, she ate pizza with friends and her son and did not go to Kroger. She said that when she later saw Sergeant Reim at Kroger, she offered to let him search her bag and her car for a prescription pad.

Appellant explained her belief that someone, including maybe her mother, Patricia Lund, set her up, although she conceded that she did not tell Sergeant Reim about that theory.[6] She believed that Porter and Yang lied or were mistaken. However, she agreed that the written description that Porter put in her written statement to police substantially matched her physical characteristics.

**Procedural history**

A grand jury indicted appellant for fraudulently obtaining or possessing hydrocodone. Appellant filed several pretrial documents and then pled not guilty. The jury found appellant guilty, and after hearing evidence related to her punishment, it assessed ten years' confinement but recommended suspension of the confinement while appellant participated in community supervision. The trial court sentenced her accordingly. Appellant filed her notice of appeal.

**Exclusion of Drug Test Evidence**

In her first issue, appellant contends that the trial court erred by excluding evidence showing that she tested negative for drugs after her arrest. Before the beginning of the trial, appellant filed business records from Sur-Scan Inc. that

---

[6]When Lund testified, she denied that she set up appellant and opined that appellant has a poor character for being truthful.

showed that she tested negative for several drugs in March 2008. The State responded by filing a motion that asked the trial court to exclude any reference to appellant's drug testing because it was irrelevant under rules of evidence 401 and 403. *See* Tex. R. Evid. 401, 403. Appellant contended that (1) while the use of hydrocodone is not an element of appellant's crime, the lack of appellant's use of that drug shows an absence of motive to commit the crime, and (2) a jury could infer that the true identity of someone who fraudulently obtained hydrocodone is more likely to be a user of the drug than a nonuser.

The trial court held a hearing on the admissibility of the test results during the trial but outside of the jury's presence. The court took judicial notice of its file, which included the documents containing the results. However, the court determined that the results were irrelevant and inadmissible in the guilt-phase of the trial, reasoning, "[Appellant's] not charged with using drugs. She's charged with possessing drugs. What she did with them after the fact . . . is not an element that the State's required to prove." Appellant contends on appeal that the trial court erred because the evidence is relevant and admissible.

However, even if we were to conclude that the trial court should have admitted the drug test evidence, we would then have to determine whether the exclusion of that evidence caused harm. Rule of appellate procedure 44.2 explains that if constitutional error is subject to harmless error review, "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the

6

conviction or punishment." Tex. R. App. P. 44.2(a). A nonconstitutional error "that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b).

"[T]he exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002). In other words, that the defendant is unable to present his or her case to the extent and in the form desired does not rise to constitutional error when the defendant is not prevented from presenting the substance of his or her defense to the jury. *Id.* at 666; *see Ray v. State*, 178 S.W.3d 833, 835–36 (Tex. Crim. App. 2005) (stating that evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense and explaining that evidence that "incrementally further[s] [a] defensive theory" is not of constitutional dimension); *West v. State*, 169 S.W.3d 275, 279–80 (Tex. App.—Fort Worth 2005, pet. ref'd) ("Generally, the erroneous admission or exclusion of evidence is non-constitutional error governed by rule 44.2(b) if the trial court's ruling merely offends the rules of evidence."); *Ex parte Twine*, 111 S.W.3d 664, 668 (Tex. App.—Fort Worth 2003, pet. ref'd).

The exclusion of appellant's drug test results may have affected a method used to present her defense—that she did not present the forged prescription at Kroger—but the remaining evidence enabled her to present that defense by

7

urging that Porter and Yang lied or were mistaken, that someone set her up, that Sergeant Reim's investigation was inadequate, that her fingerprints did not match those on the prescription, and that she had an alibi on the night the prescription was presented. Because we determine that the exclusion of appellant's drug test evidence, even if it was error, is not of constitutional dimension, we must apply rule 44.2(b). *See* Tex. R. App. P. 44.2(b); *Potier*, 68 S.W.3d at 666; *Elmore v. State*, 116 S.W.3d 801, 808 (Tex. App.—Fort Worth 2003, pet. ref'd).

An error affects a defendant's substantial rights when it has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

In making the harm determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56; *see Walters v. State*,

8

247 S.W.3d 204, 219 (Tex. Crim. App. 2007) ("[I]t is the responsibility of the reviewing court to decide whether it is likely that the error had some adverse effect on the proceedings."); *Davis v. State*, 268 S.W.3d 683, 709 (Tex. App.—Fort Worth 2008, pet. ref'd) ("[E]vidence of an appellant's guilt is one factor to consider in performing a harm analysis under rule 44.2(b).").

Here, the jury was squarely confronted with making a determination between the credibility of Porter and Yang, who unequivocally told them that appellant presented the forged prescription, and appellant, who said that she did not. The admission of appellant's negative drug test results would not have made Porter's and Yang's eyewitness testimony any less credible. Also, even if evidence that appellant did not use hydrocodone for a period of time near the offense tangentially relates to whether she fraudulently obtained it or possessed it on the day of the offense, the jury was obviously not persuaded by other testimony about the nondiscovery of her fingerprints on the prescription, which more directly related to her involvement in the crime.

Next, the admission of the results would not have necessarily added credence to appellant's story because, as the trial court explained, appellant's nonuse of hydrocodone does not exculpate her from fraudulently obtaining or possessing it; she could have been a courier of the drug. And the jury had reasons to discredit appellant's testimony. First, although appellant testified that she ate pizza with several people on the night that the prescription was presented, she did not call any of those people to corroborate that story.

9

Second, during the State's cross-examination of appellant, in several responses, she denied telling Sergeant Reim that her son might have had something to do with the fraudulent prescription. But the recording of appellant's interview with Sergeant Reim clearly shows that she did imply that her son was involved in this crime. Finally, appellant's mother told the jury that appellant has a poor character for truthfulness.

Appellant relies on the court of criminal appeals's opinion in *Ray* to contend that she was harmed by the exclusion of the drug test results. 178 S.W.3d at 833–36. In *Ray*, the defendant was convicted of possessing a controlled substance with intent to deliver, and the trial court had excluded evidence that would have shown that the drugs might have belonged to someone else. *Id.* at 834.[7] The court of criminal appeals determined that the exclusion was harmful, reasoning,

> A review of the record as a whole reveals that the question of possession was not only the most important issue in the case, it was the only contested issue in the case. Appellant was prejudiced because she was precluded from presenting third-party witness testimony which would have corroborated *and given independent credibility to the defense she sought to establish*. Because appellant's only argument was that she did not possess the drugs, and the State's case rested on a contrary argument, the erroneous exclusion of testimony that tended to establish possession in another was a "serious" error.

---

[7]Specifically, the trial court excluded testimony from a witness who would have established that the driver of the car that Ray was in took a cocaine rock similar to one that the police found and gave it to the witness just before Ray and the driver of the car were stopped by police. *Id.* at 835.

10

*Id.* at 836 (emphasis added). Unlike in *Ray*, the excluded evidence in this case was not from a third-party eyewitness, and it would not have tended to establish that someone else in particular presented the forged prescription; rather, as recognized by appellant, her nonuse of hydrocodone related to only one of her possible motives to present the prescription.[8]

For all of these reasons, we conclude that, in the context of the entire case against appellant, the trial court's alleged error in excluding the drug test results did not have a substantial or injurious effect on the jury's verdict and did not affect appellant's substantial rights. *See King*, 953 S.W.2d at 271. Thus, we disregard the alleged error. *See* Tex. R. App. P. 44.2(b); *McKinney v. State*, 59 S.W.3d 304, 312–13 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding that, in a case where the defendant was charged with intentionally or knowingly causing bodily injury to a child, the trial court's exclusion of testimony from the child that the defendant did not intend to cause the injury was harmless because there was other testimony about the child's burns being caused by forced immersion in hot water and the defendant provided inconsistent testimony); *Hughes v. State*, 12 S.W.3d 166, 168 (Tex. App.—Fort Worth 2000, no pet.); *cf. James v. State*, 102 S.W.3d 162, 176–79 (Tex. App.—Fort Worth 2003, pet. ref'd) (concluding that there was harm under rule 44.2(b) when the trial court excluded a statement made by the driver of a car who said the defendant, a passenger, did not know

---

[8]We note that none of the State's witnesses testified that appellant used hydrocodone.

anything about the drugs that the police found). We overrule appellant's first issue.

## Discovery of Lund's Fingerprints

In her second issue, appellant contends that the trial court erred by refusing to require Lund (appellant's mother) to give fingerprints that appellant's expert could compare with those that he found on the prescription. Before the trial began, appellant filed a motion to compel Lund to submit to a deposition for the purpose of giving her fingerprints. The motion, which relied mainly on articles 39.02 and 39.04 of the code of criminal procedure, said that Lund had refused to give fingerprints voluntarily and explained that one of appellant's defensive theories was that Lund tendered the fraudulent prescription.[9] *See* Tex. Code Crim. Proc. Ann. art. 39.02 (Vernon Supp. 2010), art. 39.04 (Vernon 2005). Appellant attached affidavits from her counsel and other documents to the motion, which the trial court denied after holding a hearing.

A defendant does not have a general constitutional right to discovery in a criminal case. *See In re State*, 162 S.W.3d 672, 676 (Tex. App.—El Paso 2005, no pet.) (citing *Washington v. State*, 856 S.W.2d 184, 187 (Tex. Crim. App. 1993)); *Page v. State*, 7 S.W.3d 202, 206 (Tex. App.—Fort Worth 1999, pet. ref'd) (en banc). However, a trial court has wide discretion in granting or denying

---

[9]During the punishment portion of the trial, Lund testified that she refused to provide her fingerprints to appellant's counsel because her attorney believed that there was no reason for her to do so.

a deposition in a criminal case; we review a trial court's decision to deny a deposition for an abuse of that discretion. *May v. State*, 738 S.W.2d 261, 273 (Tex. Crim. App.), *cert. denied*, 484 U.S. 872 (1987); *Aguilar v. State*, 468 S.W.2d 75, 79 (Tex. Crim. App. 1971); *Yaw v. State*, 632 S.W.2d 768, 769 (Tex. App.—Fort Worth 1982, pet. ref'd).

Depositions of witnesses may be taken by either the State or the defendant for a good reason and upon the trial court's approval. Tex. Code Crim. Proc. Ann. art. 39.02; *see Yaw*, 632 S.W.2d at 769. Such depositions may be used at trial in limited circumstances. *See* Tex. Code Crim. Proc. Ann. art. 39.02, arts. 39.12–.13 (Vernon 2005). Civil rules govern depositions taken in criminal cases when such rules are not in conflict with the code of criminal procedure. *Id.* art. 39.04.

Appellant wanted to take Lund's deposition under article 39.02 for the sole purpose of obtaining her fingerprints; appellant did not express any desire to take Lund's testimony. To justify obtaining Lund's fingerprints through a deposition, appellant relies on rule of civil procedure 199.2(b)(5), which states that a notice of an intent to take an oral deposition "may include a request that the witness produce at the deposition documents or tangible things within the scope of discovery and within the witness's possession, custody, or control."[10] Tex. R. Civ. P. 199.2(b)(5).

---

[10]Rule of civil procedure 192.3(b) defines "documents and tangible things" that may be produced at a deposition to include "books, accounts, drawings,

13

However, article 39.14 of the code of criminal procedure, which is titled "Discovery," limits a defendant to obtaining "documents, papers, . . . objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action *and which are in the possession, custody or control of the State or any of its agencies.*"  Tex. Code Crim. Proc. Ann. art. 39.14 (Vernon Supp. 2010) (emphasis added).  Courts have interpreted article 39.14 constrictively; they have held that the article limits the methods of discovery that may be used to compel nonparties to give information. For example, in *State ex rel. Wade v. Stephens*, the Dallas Court of Appeals held that article 39.14's limitation to the possession of the discoverable item by the State negated a trial court's authority to require the victim in an aggravated sexual assault case to submit to a physical examination.  724 S.W.2d 141, 144– 45 (Tex. App.—Dallas 1987, no writ) (expressing that article 39.14 is "a comprehensive pretrial discovery statute, and . . . criminal discovery orders must fall within the confines of that article's limited authorization").  Similarly, relying in part on *Stephens*, the Houston (Fourteenth District) Court of Appeals held that a trial court exceeded its authority under article 39.14 when it required two child witnesses to undergo psychological examinations.  *In re State ex rel. Robinson*,

---

graphs, charts, photographs, electronic or videotape recordings, data, and data compilations."  Tex. R. Civ. P. 192.3(b).  The rule does not specifically allow or prohibit other physical evidence, such as fingerprints or DNA, to be "produced" at a deposition.  *Id.*  We do not express any opinion about whether fingerprints may generally be required to be produced at a civil deposition.

14

116 S.W.3d 115, 116–19 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *see also Smith v. State*, No. 05-03-01833-CR, 2005 WL 15210, at \*7 (Tex. App.—Dallas Jan. 4, 2005, pet. ref'd) (not designated for publication) ("An order requiring the complainant to submit to a psychiatric examination would clearly exceed the scope of discovery authorized by article 39.14."); *Mitchell v. State*, 11-93-00024-CR, 1994 WL 16189625, at \*3–4 (Tex. App.—Eastland Nov. 17, 1994, pet. ref'd) (not designated for publication) (citing *Stephens* and holding that because of article 39.14's limitation, a trial court correctly denied the defendant's request for discovery of records from a crime victim crisis center that was not a state agency).

We agree with these courts' interpretation of article 39.14 based on the explicit language of the statute that limits a defendant's discovery to evidence "in the possession, custody, or control of the State or any of its agencies." *See Hirsch v. State*, 282 S.W.3d 196, 201 (Tex. App.—Fort Worth 2009, no pet.) (stating that we must apply a statute's common meaning). Thus, we hold that to the extent rule of civil procedure 199.2(b)(5) requires a witness to produce "documents or tangible things" (including, possibly, fingerprints) that are within the witness's possession, custody, or control but are not within the State's possession, custody, or control, rule 199.2(b)(5) conflicts with the code of criminal procedure and does not govern criminal depositions. *See* Tex. Code Crim. Proc. Ann. art. 39.04. In other words, we conclude that a defendant may not use a deposition under article 39.02 to circumvent article 39.14's limitation

15

concerning gathering physical or documentary evidence from a nonparty through discovery.

For these reasons, we hold that the trial court did not abuse its discretion by denying appellant's motion to subject Lund to a deposition for the purpose of obtaining her fingerprints. *See May*, 738 S.W.2d at 273. We overrule appellant's second issue.

## Omissions from the Reporter's Record

Finally, in her third issue, appellant contends that the trial court erred because the court reporter did not record bench conferences during the trial. Before the trial began, appellant filed a motion asking the trial court to instruct the court reporter to record "all conferences that may occur at the Bench during the course of [the] trial." The clerk's record does not contain an order resolving that motion. The reporter's record omits the contents of several bench conferences that occurred during the trial.

The court of criminal appeals has stated in a similar case,

> We need not decide whether [Texas Rule of Appellate Procedure 13.1] requires court reporters to record all bench conferences whether or not such recording is requested. If the rule does so require, it simply places a party in the same position he would be in if recording of bench conferences had been requested before trial. . . .
>
> The record does not reflect that appellant made an objection to the court reporter's failure to record the bench conferences nor does appellant allege he made such an objection at trial. Therefore, appellant has failed to preserve his complaint for appeal.

16

*Valle v. State*, 109 S.W.3d 500, 508–09 (Tex. Crim. App. 2003); *see Velazquez v. State*, 222 S.W.3d 551, 556–57 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Appellant did not object to the court reporter's failure to record bench conferences. She contends, however, that she could not have objected to the lack of recording at trial because the record "reveals no effort on the part of the reporter to alert anyone that she intended to cease reporting these conferences. Likewise, nothing . . . indicates that the reporter stood up and/or left the courtroom during proceedings." But the *Valle* opinion does not create an exception to the preservation requirement when the defendant's counsel claims that he or she did not know that bench conferences were not being recorded, and appellant has not cited any authority supporting such an exception. To the contrary, courts have rejected arguments similar to the one made by appellant. *See Peek v. State*, No. 06-08-00069-CR, 2008 WL 5090344, at *2 (Tex. App.— Texarkana Dec. 4, 2008, no pet.) (mem. op., not designated for publication); *Velazquez*, 222 S.W.3d at 556 n.4. Therefore, we hold that appellant failed to preserve her complaint about recording bench conferences, and we overrule her third issue. *See* Tex. R. App. P. 33.1(a); *Valle*, 109 S.W.3d at 508–09; *Velazquez*, 222 S.W.3d at 556–57.

## Conclusion

Having overruled each of appellant's issues, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DAUPHINOT, J. concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 28, 2010