Irving McKINNEY, Jr., Appellant,

v.

The STATE of Texas.

No. 2–00–242–CR.

Court of Appeals of Texas,
Fort Worth.

Sept. 27, 2001.

J.R. Molina, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney; Charles M. Mallin, Chief of Appellate Section; Michael R. Casillas, John J. Lapham, Tonya S. Dohoney, Assistant District Attorneys, Fort Worth, Attorneys for Appellee.

PANEL B: DAY and DAUPHINOT, JJ.; and DAVID L. RICHARDS, J. (Sitting by Assignment).

## OPINION

DAUPHINOT, Justice.

A jury convicted Appellant Irving McKinney, Jr. of the offense of intentionally or knowingly causing serious bodily injury to a child under the age of fifteen.[1] The specific manner and means alleged in the indictment and found by the jury were "by causing [the child] to contact a hot liquid." The jury also affirmatively found that the hot liquid was a deadly weapon. The trial court assessed Appellant's punishment at twenty-five years' confinement. Appellant brings four points on appeal, contending that the trial court erred by denying his motion to appoint an expert witness, denying his motion to quash the indictment, and excluding evidence of the victim's opinion regarding whether Appellant intentionally harmed him. Appellant also complains that he was denied effective assistance of counsel. Finding no reversible error, we affirm.

---

1. See TEX. PENAL CODE ANN. § 22.04 (Vernon Supp.2001).

## FACTUAL BACKGROUND

On August 30, 1998, Appellant's five-year-old son, D.F., sustained second and third degree burns over seventeen percent of his body as a result of sitting in hot bath water. D.F.'s treating physicians testified at trial that his burns were inconsistent with an accidental burning and consistent with someone having held him in the hot water. D.F. testified that Appellant put him into the bathtub and prevented him from getting out. Appellant testified that he checked the water temperature before D.F. climbed into the tub, and that it was "comfortable." According to Appellant, D.F. was throwing a tantrum and told him that the water was hot. Appellant stated that he did not believe D.F.'s protestations because he thought that D.F. just did not want to take a bath. Appellant told D.F. to sit down in the tub while he turned to get a towel. When Appellant turned back around, he saw that D.F.'s feet were blistered and that the water in the tub was becoming discolored. Appellant immediately lifted D.F. out of the tub and poured cold water on him. At the hospital, Appellant told personnel that D.F. had fallen into the bathtub.

## MOTION TO APPOINT EXPERT

In his first point, Appellant argues that the trial court erred in denying his motion for the appointment of an expert witness, thus depriving him of due process protections.

Before trial, on February 8, 2000, Appellant filed an ex parte motion seeking the appointment of an expert and the expedited payment of a retainer fee. Specifically, Appellant requested that the trial court appoint Dr. Linda Norton, a forensic pathologist, as his expert and "order immediate payment to Dr. Norton of her required retainer in the amount of $3,500.00." In his motion, Appellant stated that "[a]n ex-pert will be necessary to assist the Defense in resolving the significant issue of whether the injuries were inflicted intentionally or knowingly." In her affidavit, which was attached to Appellant's motion, Dr. Norton stated, "I am of the opinion that I can assist [defense counsel] in preparing for trial and representing Mr. McKinney in this matter."

At a pretrial hearing, Appellant's trial counsel asked the visiting judge to rule on the motion. In open court, the following exchange occurred:

> [COUNSEL]: I spoke to Judge Drago sometime back—I'm not real sure when it was. It's been a couple of months ago—about this motion, and he indicated to me that he would grant the motion but that he could not order a retainer paid by the county. He said that his understanding, there was no means for doing that. That this had come up before and that there's no mechanism for providing a retainer.
>
> THE COURT: In other words, they have to just submit a bill, then it's paid?
>
> [COUNSEL]: That's what was explained, yes, sir. So he told me it would be denied then with respect to the retainer part of it.
>
> THE COURT: All right. He's much more familiar with the way that the auditor's office works than I am, and if that was his decision, then I'm going to deny your request for the appointment of Dr. Linda E. Norton as far as ordering that she be—she receive a $3,500 retainer.

The State argued that Appellant had not shown what type of evidence Dr. Norton was going to offer, but that the State was "not opposed to the defense having an expert in this case or any other case, but they have to get paid like our experts get paid and other experts get paid. Therefore, we think it's an unreasonable re-

quest." The visiting judge later signed an order denying Appellant's motion "as per Judge Joe Drago's statement to counsel."

The United States Supreme Court held in *Ake v. Oklahoma* that due process entitles an indigent criminal defendant to the appointment of an expert to assist in his defense when the defendant makes a preliminary showing that the issue for which he seeks expert assistance is "likely to be a significant factor at trial."[2] The Supreme Court stated: "When the defendant is able to make an *ex parte* threshold showing to the trial court that [the issue] is likely to be a significant factor in his defense, the need for the assistance of [an expert] is readily apparent."[3]

In *Williams v. State,* the Texas Court of Criminal Appeals held that the Supreme Court's suggestion that the threshold showing should be made ex parte is consistent with the due process principles upon which *Ake* rests.[4] The *Williams* court reasoned:

> [I]f an indigent defendant is not entitled to an ex parte hearing on his *Ake* motion, he is forced to choose between either forgoing the appointment of an expert or disclosing to the State in some detail his defensive theories or theories about weaknesses in the State's case. This is contrary to *Ake*'s concern that an indigent defendant who is entitled to expert assistance have "meaningful access to justice," and undermines the work product doctrine.[5]

The *Williams* court declined to hold that, in order for an indigent defendant to avail himself of one of the "basic tools for an adequate defense," he may be compelled to disclose defensive theories to the State.[6] Instead, the court held that a defendant is entitled to make his *Ake* motion ex parte.[7]

In the case now before us, the record reveals that the elected judge of the trial court found, ex parte, that Appellant had sufficiently demonstrated his need for expert assistance, and that the only question was one of payment. We are disturbed, therefore, that Appellant was required to justify his request for funds in a contested hearing in which the State participated. We are also disturbed that the State, although fully aware that Appellant had attempted to secure expert assistance, improperly and unfairly made the following statements during its closing argument before the jury regarding the lack of expert testimony to counter the conclusions of the State's expert, Dr. Purdue:

> We know that they have the ability to call witnesses. If Dr. Purdue was all wrong and all wet about his conclusion, they certainly could have brought an expert in here to say, oh, that Dr. Purdue, he doesn't know what he's talking about.
>
> . . . .
>
> They could have brought some expert in here to say, oh, Dr. Purdue, he's a nut. . . . "He doesn't know what he's talking about," did you hear anybody like that? Did you hear one person say that Dr. Purdue is a nut or an idiot or

---

**2.** 470 U.S. 68, 74, 105 S.Ct. 1087, 1091–92, 84 L.Ed.2d 53 (1985); *see Williams v. State,* 958 S.W.2d 186, 192 (Tex.Crim.App.1997); *Rey v. State,* 897 S.W.2d 333, 339 (Tex.Crim. App.1995).

**3.** *Ake,* 470 U.S. at 82–83, 105 S.Ct. at 1096; *see Williams,* 958 S.W.2d at 192.

**4.** *Williams,* 958 S.W.2d at 192.

**5.** *Id.* at 193.

**6.** *Id.* at 193–94.

**7.** *Id.* at 194.

doesn't know what he's talking about? Absolutely not.

While an indigent defendant is not entitled to "all the assistance that his wealthier counterparts might buy," [8] he is, at minimum, to be assured access to a competent expert who will "assist in evaluation, preparation, and presentation of the defense." [9] The *Ake* court, however, concluded that, "as in the case of the provision of counsel we leave to the State the decision on how to implement this right." [10] We understand the court to refer to the state legislature or other governmental body, rather than to the prosecution. Indeed, article 26.05(a) of the Texas Code of Criminal Procedure allows for *reimbursement* of reasonable expenses incurred with prior court approval for expert investigation and testimony.[11]

We are compelled to hold that, although Appellant was indigent and his counsel court-appointed, and although there was no showing that appointed counsel had funds with which to retain Dr. Norton, the legislature currently requires that counsel pay the expert out of his own pocket and accept the amount of reimbursement ultimately approved by the trial court. We know of no law that requires the trial court to approve a reasonable fee or that requires that an indigent defendant be allowed expert fees substantially equal to those paid by the prosecution. We would also point out that it is the county and not the state that must pay these fees.[12] We believe that this issue involves fundamental concepts of due process and equal protection, and we urge the legislature to revisit the question of funds for indigent defense.

Here, Appellant requested the advance payment of a retainer fee to secure expert assistance. By statute, however, he is entitled only to reimbursement for such expenses. Because we are bound by existing precedent and existing legislative enactment, we hold that the trial court properly denied Appellant's motion for the appointment of an expert on this basis. Consequently, we overrule Appellant's first point.

## MOTION TO QUASH

In his second point, Appellant argues that the trial court erred in denying his motion to quash the indictment on the grounds that it does not provide adequate notice of the manner and means by which he committed the offense alleged and does not permit him to enter a plea in bar to a subsequent prosecution. The indictment alleges in pertinent part that Appellant did "intentionally or knowingly cause serious bodily injury to [D.F.], a child younger than 15 years of age, by causing [D.F.] to contact a hot liquid." Appellant contends that, because the indictment fails to allege how Appellant caused D.F. to contact a hot liquid, fails to define "contact," and fails to identify the "hot liquid," it does not adequately set forth the manner and means of the commission of the offense. He further argues that this lack of specificity denies him precise notice of the offense with which he is charged and denies him sufficiently specific allegations to bar a subsequent prosecution for the same offense. We disagree.

---

8. *Ake,* 470 U.S. at 77, 105 S.Ct. at 1093.

9. *Id.* at 83, 105 S.Ct. at 1096; *see Griffith v. State,* 983 S.W.2d 282, 286 (Tex.Crim.App. 1998), *cert. denied,* 528 U.S. 826, 120 S.Ct. 77, 145 L.Ed.2d 65 (1999).

10. *Ake,* 470 U.S. at 83, 105 S.Ct. at 1096.

11. Tex.Code Crim. Proc. Ann. art. 26.05(a) (Vernon 1989).

12. *See id.* art. 26.05(d).

An accused's right to notice of the accusation against him is premised upon constitutional principles, both federal and state, as well as several statutory provisions.[13] The Sixth Amendment to the United States Constitution guarantees an accused the right to be informed "of the nature and cause of the accusation."[14] Article I, Section 10 of the Texas Constitution states that an accused "shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof."[15] The legislature has also sought to provide guidance as to the adequacy of notice in a charging instrument. Article 21.02(7) of the code of criminal procedure provides that "[t]he offense must be set forth in plain and intelligible words."[16] Article 21.03 instructs that "[e]verything should be stated in an indictment which is necessary to be proved."[17] Article 21.04 states: "The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense."[18] Finally, article 21.11 provides in part:

An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment.[19]

A motion to quash should be granted when the language in the indictment concerning the defendant's conduct is so vague or indefinite as to deny the defendant effective notice of the acts he allegedly committed.[20] The general rule is that the State is not required to plead evidentiary facts that are not essential to provide the required notice to the accused.[21] We review a trial court's ruling on a motion to quash the indictment under an abuse of discretion standard.[22]

Both "contact" and "liquid" are words of common understanding. Any additional description is an evidentiary matter not required to be alleged in the indictment. We conclude that the indictment provided Appellant with adequate notice of the charges against which he must defend. We further find that the allegations contained within the indictment are sufficient to bar a subsequent prosecution for Appellant's causing serious bodily injury to D.F. by causing him to contact any form of liquid in any manner, whether by immersion, pouring, splashing, dipping, plunging, sinking, submerging, bathing, or any other conceivable manner of causing contact. Accordingly, we overrule Appellant's second point.

## EXCLUSION OF TESTIMONY

In his third point, Appellant complains that the trial court improperly excluded

---

**13.** *Daniels v. State,* 754 S.W.2d 214, 217 (Tex. Crim.App.1988).

**14.** U.S. Const. amend. VI.

**15.** Tex. Const. art. I § 10.

**16.** Tex.Code Crim. Proc. Ann. art. 21.02(7) (Vernon 1989).

**17.** *Id.* art. 21.03.

**18.** *Id.* art 21.04.

**19.** *Id.* art. 21.11.

**20.** *Daniels,* 754 S.W.2d at 217.

**21.** *Id.* at 218.

**22.** *Thomas v. State,* 621 S.W.2d 158, 163 (Tex. Crim.App.1980).

D.F.'s testimony regarding whether Appellant intended to harm him. During the direct examination of D.F. by defense counsel, the following exchange occurred:

Q. All right. Here's what I want to ask you about, [D.F.]. Do you think your dad meant to hurt you?

A. No.

[STATE]: Your Honor, I'm going to object to that question. I think that calls for speculation on the part of this child witness.

THE COURT: Sustained

[STATE]: Ask the jury to disregard.

THE COURT: Jury's so instructed.

At the conclusion of D.F.'s testimony, Appellant made a bill of exceptions. During that offer of proof, the following exchange occurred:

Q. Okay. What I want to ask you is, do you think your dad meant to hurt you in that water?

A. No.

Q. You don't think he meant to hurt you?

A. No.

Q. Do you think he meant to hold you in the water until you got hurt?

A. No.

After completing his bill, Appellant asked the trial court to clarify its previous ruling. The court stated that D.F. "can't testify what was in your client's mind, whether he intended to hurt him or not."

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard.[23] We will not reverse a trial court as long as its ruling was within the "zone of reasonable disagreement."[24] The appropriate inquiry is whether the court acted without reference to any guiding rules and principles.[25]

Rule 602 of the Texas Rules of Evidence provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."[26] Lay witness opinion testimony is admissible under rule 701, however, if the witness's opinion or inferences are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."[27] In *Fairow v. State*, the court of criminal appeals held that a lay opinion regarding the culpable mental state with which an act was committed is admissible under rule 701 as long as the proponent of the opinion establishes personal knowledge of the facts underlying that opinion.[28] The court explained:

An opinion will satisfy the personal knowledge requirement if it is an interpretation of the witness's objective perception of events (i.e. his own senses or experience).... [W]hile a witness cannot possess personal knowledge of another's mental state, he may possess personal knowledge of facts from which an opinion regarding mental state may be drawn. The jury is then free to give

**23.** *Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996), *cert. denied*, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997); *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex.Crim.App.1990).

**24.** *Green*, 934 S.W.2d at 102; *Montgomery*, 810 S.W.2d at 391.

**25.** *Montgomery*, 810 S.W.2d at 380.

**26.** Tex.R. Evid. 602.

**27.** Tex.R. Evid. 701.

**28.** 943 S.W.2d 895, 899 (Tex.Crim.App.1997).

as much or as little weight to the opinion as it sees fit.[29]

In *Doyle v. State*, two prison guards personally observed a prisoner strike another guard.[30] The guards testified at trial, over objection, that the blows were intentional.[31] The court of appeals held that a prison guard, in explaining what he observed, could give an opinion under rule 701 as to whether the blow was "intentional or accidental."[32] The *Fairow* court agreed with this conclusion, stating: "The prison guards in *Doyle* did not have personal knowledge of the mental state with which the defendant struck their colleague. They did, however, witness the attack and thus were qualified to give an opinion based on their perception of the event."[33]

Here, D.F. witnessed the event upon which his testimony was based. He thus possessed personal knowledge of the facts from which his opinion regarding whether Appellant "meant" to hurt him was drawn. Additionally, we cannot say that D.F.'s opinion was "not capable of reasonably being formed from the events underlying the opinion."[34] While D.F. testified that Appellant placed him into the water and prevented him from getting out, he also acknowledged that Appellant "held [him] long enough to put [him] in and held [him] to get [him] out." Furthermore, we conclude that his opinion regarding Appel-

lant's mental state at the time of the incident would be helpful to the trier of fact in resolving the disputed issue of whether Appellant intentionally or knowingly caused D.F. to contact the hot water. Accordingly, because the requirements of rule 701 were satisfied, we hold that the trial court abused its discretion in excluding the proffered testimony.

■ Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.[35] If the error is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment.[36] Otherwise, we apply rule 44.2(b) and disregard the error if it does not affect Appellant's substantial rights.[37]

■ Generally, the erroneous admission or exclusion of evidence is nonconstitutional error governed by rule 44.2(b) if the trial court's ruling merely offends the rules of evidence.[38] Because we determine that the error in this case is not constitutional, rule 44.2(b) is applicable. Therefore, we are to disregard the error unless it affected Appellant's substantial rights.[39] A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict.[40] In making this determi-

---

29. *Id.*

30. 875 S.W.2d 21, 22 (Tex.App.—Tyler 1994, no pet.).

31. *Id.*

32. *Id.* at 23.

33. *Fairow*, 943 S.W.2d at 899.

34. *Id.* at 900.

35. Tex.R.App. P. 44.2.

36. Tex.R.App. P. 44.2(a).

37. Tex.R.App. P. 44.2(b); *see Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App.1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *Coggeshall v. State*, 961 S.W.2d 639, 642–43 (Tex. App.—Fort Worth 1998, pet. ref'd) (en banc).

38. *Tate v. State*, 988 S.W.2d 887, 890 (Tex. App.—Austin 1999, pet. ref'd).

39. Tex.R.App. P. 44.2(b).

40. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239,

nation, we review the record as a whole.[41]

In the case now before us, the jury heard Appellant's conflicting explanations for D.F.'s injuries, as well as his own testimony that he did not intend to hurt D.F. Additionally, the jury was presented with medical evidence indicating that D.F.'s burns were the result of forced immersion in the water. We, therefore, conclude that, in the context of the entire case against Appellant, the trial court's error in excluding the testimony in question did not have a substantial or injurious effect on the jury's verdict and did not affect Appellant's substantial rights.[42] Thus, we disregard the error and overrule Appellant's third point.[43]

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his fourth point, Appellant complains that he was denied effective assistance of counsel. Specifically, Appellant contends that his trial counsel rendered ineffective assistance by failing to secure a ruling on a pending motion for continuance after the trial court denied his motion for the appointment of an expert witness.

We apply a two-pronged test to ineffective assistance of counsel claims.[44] First, Appellant must show that his counsel's performance was deficient; second, Appellant must show the deficient performance prejudiced the defense.[45]

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.[46] The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.[47] "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[48] An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.[49] Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight.[50]

Appellant filed a motion for a continuance on February 8, 2000, which referenced a trial setting of February 28. The motion was not ruled upon. The record reflects, however, that the case was not tried until June 13, 2000. Thus, to the extent the motion for continuance was still pending at the time the trial court issued its order denying Appellant's motion for the appointment of an expert on June 12, 2000, the trial court implicitly overruled the motion for a continuance by ordering

1253, 90 L.Ed. 1557 (1946)); *Coggeshall,* 961 S.W.2d at 643.

**41.** *Kotteakos,* 328 U.S. at 764–65, 66 S.Ct. at 1248.

**42.** *See King,* 953 S.W.2d at 271.

**43.** *See* TEX.R.APP. P. 44.2(b).

**44.** *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999).

**45.** *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Hernandez v. State,* 988 S.W.2d 770, 770 (Tex.Crim.App.1999).

**46.** *Thompson,* 9 S.W.3d at 813.

**47.** *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2065.

**48.** *Id.* at 690, 104 S.Ct. at 2066.

**49.** *Thompson,* 9 S.W.3d at 814.

**50.** *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

both sides to proceed after concluding the hearing on the pretrial motions. The fact that the court's ruling was not explicit is of no moment. Appellant does not challenge the trial court's denial of the motion. Additionally, there is nothing in the record to indicate that the trial court would change its mind with regard to approving Appellant's request for payment of Dr. Norton's retainer fee, and Appellant does not cite us to any portion of the record indicating that a different expert was available. In short, Appellant has failed to develop evidence rebutting the presumption that counsel rendered effective assistance. When the record is silent as to counsel's reasons for performing or failing to perform in the manner alleged, we cannot conclude that counsel's performance was deficient.[51] Because Appellant has not met his burden of showing that his counsel's performance was deficient, we overrule his fourth point.

## CONCLUSION

Having overruled each of Appellant's points, we affirm the trial court's judgment.

---

**51.** *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.    Crim.App.1994).