COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00200-CR

 

 


 
 
 KRISTIN VANWINKLE
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

                                                                                                                             

 

------------

 

FROM THE 367TH
 DISTRICT COURT OF DENTON
COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

          In three issues, appellant Kristin
Vanwinkle appeals her conviction for obtaining or possessing hydrocodone
through the use of a fraudulent prescription.[2]  She argues that the trial court erred by
excluding evidence that she tested negative for drugs, by denying her discovery
of a witness’s fingerprints, and by failing to make a reporter’s record of
bench conferences. We affirm.

Background Facts

The facts as told by the State’s witnesses

          Candice Porter worked as a pharmacy
technician at a Kroger store in Frisco.  One
evening in August 2007, appellant, who regularly visited the pharmacy and who
Porter knew by sight, came to the pharmacy’s drop-off window.  Pharmacist Lily Yang was working with Porter
that night and also saw appellant in the store.

          Appellant told Porter that she needed
some medicine because her son had been in a baseball accident, and she handed
Porter a Lortab[3] prescription
that contained the name of Dr. Neil Jacobson, was dated 8-22-07, and was written
for “Austin Van Winkle.”[4]  Porter initialed the prescription, which
contained an old, incorrect address for Dr. Jacobson’s office.  She then printed out a label for the
prescription bottle.  After the bottle
had been filled, appellant picked it up and signed a document to indicate that
she had received it.[5]

          The transaction between Porter and
appellant lasted for about fifteen minutes. 
After appellant received the bottle, she spoke with Yang about how
Austin, her son, could take the medicine. 
According to Yang, the only people around the pharmacy at the time of
appellant’s visit were her, appellant, and Porter.

          After appellant left the pharmacy
area, one of Kroger’s customer service employees, Debra Smith, called the
pharmacy because Smith suspected that appellant was shoplifting.  Yang became suspicious about the prescription
and wanted to verify it.

          The next day, a pharmacy employee
called Dr. Jacobson’s office and learned that the prescription had been
forged.  On the request of Dr. Jacobson’s
office, Yang called the police to tell them about the forgery.

          Days later, Frisco Police Department
Sergeant Jay Reim went to Kroger to investigate and noticed that another
officer was already there and was talking to appellant, who had coincidentally returned
to the store.  Sergeant Reim took only a
photocopy of the prescription that Porter had received because it is Kroger’s
policy to retain original prescriptions and he did not believe that a
fingerprint analysis would be useful since the prescription was likely touched
by many people.  He met with appellant a
few days later, and the police eventually got a warrant and arrested her.

 

 

The facts as told by appellant’s witnesses

          Appellant called Kroger store manager
Donny Pauling as a witness to discredit Porter’s and Yang’s testimony by establishing
that no one was working in customer service on the night that appellant
allegedly obtained the prescription.  Pauling
said that Smith (who, according to Porter, made the call from customer service about
appellant’s alleged shoplifting) was working on the night in question, but
Pauling conceded that Smith’s time card said that she was working near the
self-checkout register.  Pauling
explained that Smith typically worked as a customer service supervisor and that
employees may work at “different places in their shift.”  He said that the information on Smith’s time
card did not mean that she did not work in customer service on the evening in
question.

          Appellant also presented testimony
from Jimmy Chilcutt, a retired police latent fingerprint examiner.  Chilcutt said that he compared appellant’s
fingerprints to eleven fingerprints from the prescription that appellant
allegedly gave to Porter.  He testified
that none of the eleven fingerprints matched appellant’s fingerprints.  On cross-examination, Chilcutt admitted that
he could not testify that appellant did not touch the prescription but only
that none of the eleven fingerprints on the prescription belonged to her.  Chilcutt admitted that more than three people
touched the prescription before he examined it and that several fingerprints on
the prescription overlapped.

          Appellant testified that she went to
Kroger about twice a week in 2007.  She said
that on the night in question, she ate pizza with friends and her son and did
not go to Kroger.  She said that when she
later saw Sergeant Reim at Kroger, she offered to let him search her bag and her
car for a prescription pad.

          Appellant explained her belief that someone,
including maybe her mother, Patricia Lund, set her up, although she conceded
that she did not tell Sergeant Reim about that theory.[6]  She believed that Porter and Yang lied or were
mistaken.  However, she agreed that the
written description that Porter put in her written statement to police substantially
matched her physical characteristics.

Procedural history

          A grand jury indicted appellant for
fraudulently obtaining or possessing hydrocodone.  Appellant filed several pretrial documents
and then pled not guilty.  The jury found
appellant guilty, and after hearing evidence related to her punishment, it
assessed ten years’ confinement but recommended suspension of the confinement
while appellant participated in community supervision.  The trial court sentenced her accordingly.  Appellant filed her notice of appeal.

Exclusion of Drug Test Evidence

          In her first issue, appellant contends
that the trial court erred by excluding evidence showing that she tested
negative for drugs after her arrest.  Before
the beginning of the trial, appellant filed business records from Sur-Scan Inc.
that showed that she tested negative for several drugs in March 2008.  The State responded by filing a motion that
asked the trial court to exclude any reference to appellant’s drug testing
because it was irrelevant under rules of evidence 401 and 403.  See
Tex. R. Evid. 401, 403.  Appellant contended
that (1) while the use of hydrocodone is not an element of appellant’s crime,
the lack of appellant’s use of that drug shows an absence of motive to commit the
crime, and (2) a jury could infer that the true identity of someone who
fraudulently obtained hydrocodone is more likely to be a user of the drug than
a nonuser.

          The trial court held a hearing on the
admissibility of the test results during the trial but outside of the jury’s
presence.  The court took judicial notice
of its file, which included the documents containing the results.  However, the court determined that the results
were irrelevant and inadmissible in the guilt-phase of the trial, reasoning,
“[Appellant’s] not charged with using drugs. 
She’s charged with possessing drugs. 
What she did with them after the fact . . . is not an element that the
State’s required to prove.”  Appellant
contends on appeal that the trial court erred because the evidence is relevant
and admissible.

          However, even if we were to conclude
that the trial court should have admitted the drug test evidence, we would then
have to determine whether the exclusion of that evidence caused harm.  Rule of appellate procedure 44.2 explains
that if constitutional error is subject to harmless error review, “the court of
appeals must reverse a judgment of conviction or punishment unless the court
determines beyond a reasonable doubt that the error did not contribute to the
conviction or punishment.”  Tex. R. App.
P. 44.2(a).  A nonconstitutional error “that
does not affect substantial rights must be disregarded.”  Tex. R. App. P. 44.2(b).

          “[T]he exclusion of a defendant’s
evidence will be constitutional error only if the evidence forms such a vital
portion of the case that exclusion effectively precludes the defendant from
presenting a defense.”  Potier v. State, 68 S.W.3d 657, 665
(Tex. Crim. App. 2002).  In other words, that
the defendant is unable to present his or her case to the extent and in the
form desired does not rise to constitutional error when the defendant is not
prevented from presenting the substance of his or her defense to the jury.  Id.
at 666; see Ray v. State, 178 S.W.3d
833, 835–36 (Tex. Crim. App. 2005) (stating that evidentiary rulings rarely
rise to the level of denying the fundamental constitutional rights to present a
meaningful defense and explaining that evidence that “incrementally further[s]
[a] defensive theory” is not of constitutional dimension); West v. State, 169 S.W.3d 275, 279–80 (Tex. App.—Fort Worth 2005,
pet. ref’d) (“Generally, the erroneous admission or exclusion of evidence is
non-constitutional error governed by rule 44.2(b) if the trial court’s ruling
merely offends the rules of evidence.”); Ex
parte Twine, 111 S.W.3d 664, 668 (Tex. App.—Fort Worth 2003, pet. ref’d).

          The exclusion of appellant’s drug test
results may have affected a method used to present her defense—that she did not
present the forged prescription at Kroger—but the remaining evidence enabled
her to present that defense by urging that Porter and Yang lied or were
mistaken, that someone set her up, that Sergeant Reim’s investigation was
inadequate, that her fingerprints did not match those on the prescription, and
that she had an alibi on the night the prescription was presented.  Because we determine that the exclusion of
appellant’s drug test evidence, even if it was error, is not of constitutional
dimension, we must apply rule 44.2(b).  See Tex. R. App. P. 44.2(b); Potier, 68 S.W.3d at 666; Elmore v. State, 116 S.W.3d 801, 808
(Tex. App.—Fort Worth 2003, pet. ref’d).

          An error affects a defendant’s substantial
rights when it has a substantial and injurious effect or influence in
determining the jury’s verdict.  King v. State, 953 S.W.2d 266, 271 (Tex.
Crim. App. 1997) (citing Kotteakos v.
United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).  Conversely, an error does not affect a
substantial right if we have “fair assurance that the error did not influence
the jury, or had but a slight effect.”  Solomon v. State, 49 S.W.3d 356, 365
(Tex. Crim. App. 2001).

          In making the harm determination, we
review the record as a whole, including any testimony or physical evidence
admitted for the jury’s consideration, the nature of the evidence supporting
the verdict, and the character of the alleged error and how it might be
considered in connection with other evidence in the case.  Motilla
v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  We may also consider the jury instructions,
the State’s theory and any defensive theories, whether the State emphasized the
error, closing arguments, and even voir dire, if applicable.  Id.
at 355–56; see Walters v. State, 247
S.W.3d 204, 219 (Tex. Crim. App. 2007) (“[I]t is the responsibility of the
reviewing court to decide whether it is likely that the error had some adverse
effect on the proceedings.”); Davis v.
State, 268 S.W.3d 683, 709 (Tex. App.—Fort Worth 2008, pet. ref’d)
(“[E]vidence of an appellant’s guilt is one factor to consider in performing a
harm analysis under rule 44.2(b).”).

          Here, the jury was squarely confronted
with making a determination between the credibility of Porter and Yang, who
unequivocally told them that appellant presented the forged prescription, and
appellant, who said that she did not. 
The admission of appellant’s negative drug test results would not have
made Porter’s and Yang’s eyewitness testimony any less credible.  Also, even if evidence that appellant did not
use hydrocodone for a period of time near the offense tangentially relates to
whether she fraudulently obtained it or possessed it on the day of the offense,
the jury was obviously not persuaded by other testimony about the nondiscovery
of her fingerprints on the prescription, which more directly related to her
involvement in the crime.  

          Next, the admission of the results
would not have necessarily added credence to appellant’s story because, as the
trial court explained, appellant’s nonuse of hydrocodone does not exculpate her
from fraudulently obtaining or possessing it; she could have been a courier of
the drug.  And the jury had reasons to
discredit appellant’s testimony.  First,
although appellant testified that she ate pizza with several people on the
night that the prescription was presented, she did not call any of those people
to corroborate that story.  Second, during
the State’s cross-examination of appellant, in several responses, she denied
telling Sergeant Reim that her son might have had something to do with the
fraudulent prescription.  But the
recording of appellant’s interview with Sergeant Reim clearly shows that she
did imply that her son was involved in this crime.  Finally, appellant’s mother told the jury
that appellant has a poor character for truthfulness.

          Appellant relies on the court of
criminal appeals’s opinion in Ray to
contend that she was harmed by the exclusion of the drug test results.  178 S.W.3d at 833–36.  In Ray,
the defendant was convicted of possessing a controlled substance with intent to
deliver, and the trial court had excluded evidence that would have shown that
the drugs might have belonged to someone else. 
Id. at 834.[7]  The court of criminal appeals determined that
the exclusion was harmful, reasoning,

A review of the record as a whole reveals that the question of
possession was not only the most important issue in the case, it was the only
contested issue in the case.  Appellant
was prejudiced because she was precluded from presenting third-party witness
testimony which would have corroborated and given independent credibility to
the defense she sought to establish.  Because appellant’s only argument was that she
did not possess the drugs, and the State’s case rested on a contrary argument,
the erroneous exclusion of testimony that tended to establish possession in
another was a “serious” error.

 

Id. at 836 (emphasis added).  Unlike in Ray,
the excluded evidence in this case was not from a third-party eyewitness, and
it would not have tended to establish that someone else in particular presented
the forged prescription; rather, as recognized by appellant, her nonuse of
hydrocodone related to only one of her possible motives to present the
prescription.[8]

          For all of these reasons, we conclude
that, in the context of the entire case against appellant, the trial court’s alleged
error in excluding the drug test results did not have a substantial or
injurious effect on the jury’s verdict and did not affect appellant’s
substantial rights.  See King, 953 S.W.2d at 271. 
Thus, we disregard the alleged error. 
See Tex. R. App. P. 44.2(b); McKinney v. State, 59 S.W.3d 304, 312–13
(Tex. App.—Fort Worth 2001, pet. ref’d) (holding that, in a case where the
defendant was charged with intentionally or knowingly causing bodily injury to
a child, the trial court’s exclusion of testimony from the child that the
defendant did not intend to cause the injury was harmless because there was
other testimony about the child’s burns being caused by forced immersion in hot
water and the defendant provided inconsistent testimony); Hughes v. State, 12 S.W.3d 166, 168 (Tex. App.—Fort Worth 2000, no
pet.); cf. James v. State, 102 S.W.3d
162, 176–79 (Tex. App.—Fort Worth 2003, pet. ref’d) (concluding that there was
harm under rule 44.2(b) when the trial court excluded a statement made by the
driver of a car who said the defendant, a passenger, did not know anything
about the drugs that the police found).  We
overrule appellant’s first issue.

Discovery of Lund’s Fingerprints

          In her second issue, appellant
contends that the trial court erred by refusing to require Lund (appellant’s
mother) to give fingerprints that appellant’s expert could compare with those
that he found on the prescription.  Before
the trial began, appellant filed a motion to compel Lund to submit to a
deposition for the purpose of giving her fingerprints.  The motion, which relied mainly on articles
39.02 and 39.04 of the code of criminal procedure, said that Lund had refused
to give fingerprints voluntarily and explained that one of appellant’s
defensive theories was that Lund tendered the fraudulent prescription.[9]  See Tex.
Code Crim. Proc. Ann. art. 39.02 (Vernon Supp. 2010), art. 39.04 (Vernon 2005).
Appellant attached affidavits from her counsel and other documents to the
motion, which the trial court denied after holding a hearing.

          A defendant does not have a general
constitutional right to discovery in a criminal case.  See In
re State, 162 S.W.3d 672, 676 (Tex. App.—El Paso 2005, no pet.) (citing Washington v. State, 856 S.W.2d 184, 187
(Tex. Crim. App. 1993)); Page v. State,
7 S.W.3d 202, 206 (Tex. App.—Fort Worth 1999, pet. ref’d) (en banc).  However, a trial court has wide discretion in
granting or denying a deposition in a criminal case; we review a trial court’s
decision to deny a deposition for an abuse of that discretion.  May v.
State, 738 S.W.2d 261, 273 (Tex. Crim. App.), cert. denied, 484 U.S. 872 (1987); Aguilar v. State, 468 S.W.2d 75, 79 (Tex. Crim. App. 1971); Yaw v. State, 632 S.W.2d 768, 769 (Tex.
App.—Fort Worth 1982, pet. ref’d).

          Depositions of witnesses may be taken
by either the State or the defendant for a good reason and upon the trial
court’s approval.  Tex. Code Crim. Proc.
Ann. art. 39.02; see Yaw, 632 S.W.2d at 769.  Such depositions may be used at trial in
limited circumstances.  See Tex. Code Crim. Proc. Ann. art.
39.02, arts. 39.12–.13 (Vernon 2005). 
Civil rules govern depositions taken in criminal cases when such rules
are not in conflict with the code of criminal procedure.  Id.
art. 39.04.

          Appellant wanted to take Lund’s
deposition under article 39.02 for the sole purpose of obtaining her
fingerprints; appellant did not express any desire to take Lund’s testimony.  To justify obtaining Lund’s fingerprints
through a deposition, appellant relies on rule of civil procedure 199.2(b)(5),
which states that a notice of an intent to take an oral deposition “may include
a request that the witness produce at the deposition documents or tangible
things within the scope of discovery and within the witness’s possession,
custody, or control.”[10]  Tex. R. Civ. P. 199.2(b)(5).

          However, article 39.14 of the code of
criminal procedure, which is titled “Discovery,” limits a defendant to
obtaining “documents, papers, . . . objects or tangible things not privileged,
which constitute or contain evidence material to any matter involved in the
action and which are in the possession,
custody or control of the State or any of its agencies.”  Tex. Code Crim. Proc. Ann. art. 39.14 (Vernon
Supp. 2010) (emphasis added).  Courts
have interpreted article 39.14 constrictively; they have held that the article
limits the methods of discovery that may be used to compel nonparties to give
information.  For example, in State ex rel. Wade v. Stephens, the
Dallas Court of Appeals held that article 39.14’s limitation to the possession
of the discoverable item by the State negated a trial court’s authority to
require the victim in an aggravated sexual assault case to submit to a physical
examination.  724 S.W.2d 141, 144–45
(Tex. App.—Dallas 1987, no writ) (expressing that article 39.14 is “a
comprehensive pretrial discovery statute, and . . . criminal discovery orders
must fall within the confines of that article’s limited authorization”).  Similarly, relying in part on Stephens, the Houston (Fourteenth
District) Court of Appeals held that a trial court exceeded its authority under
article 39.14 when it required two child witnesses to undergo psychological
examinations.  In re State ex rel. Robinson, 116 S.W.3d 115, 116–19 (Tex.
App.—Houston [14th Dist.] 2002, no pet.); see also
Smith v. State, No. 05-03-01833-CR, 2005 WL 15210, at *7 (Tex. App.—Dallas
Jan. 4, 2005, pet. ref’d) (not designated for publication) (“An order requiring
the complainant to submit to a psychiatric examination would clearly exceed the
scope of discovery authorized by article 39.14.”); Mitchell v. State, 11-93-00024-CR, 1994 WL 16189625, at *3–4 (Tex.
App.—Eastland Nov. 17, 1994, pet. ref’d) (not designated for publication) (citing
Stephens and holding that because of
article 39.14’s limitation, a trial court correctly denied the defendant’s
request for discovery of records from a crime victim crisis center that was not
a state agency).

          We agree with these courts’
interpretation of article 39.14 based on the explicit language of the statute
that limits a defendant’s discovery to evidence “in the possession, custody, or
control of the State or any of its agencies.” See Hirsch v. State, 282 S.W.3d 196, 201 (Tex. App.—Fort Worth
2009, no pet.) (stating that we must apply a statute’s common meaning).  Thus, we hold that to the extent rule of
civil procedure 199.2(b)(5) requires a witness to produce “documents or
tangible things” (including, possibly, fingerprints) that are within the
witness’s possession, custody, or control but are not within the State’s
possession, custody, or control, rule 199.2(b)(5) conflicts with the code of
criminal procedure and does not govern criminal depositions.  See
Tex. Code Crim. Proc. Ann. art. 39.04. 
In other words, we conclude that a defendant may not use a deposition
under article 39.02 to circumvent article 39.14’s limitation concerning
gathering physical or documentary evidence from a nonparty through
discovery.    

          For these reasons, we hold that the
trial court did not abuse its discretion by denying appellant’s motion to
subject Lund to a deposition for the purpose of obtaining her
fingerprints.  See May, 738 S.W.2d at 273. 
We overrule appellant’s second issue.

Omissions from the Reporter’s Record

          Finally, in her third issue, appellant
contends that the trial court erred because the court reporter did not record
bench conferences during the trial.  Before
the trial began, appellant filed a motion asking the trial court to instruct
the court reporter to record “all conferences that may occur at the Bench
during the course of [the] trial.”  The
clerk’s record does not contain an order resolving that motion.  The reporter’s record omits the contents of several
bench conferences that occurred during the trial.

          The court of criminal appeals has
stated in a similar case,

          We need not decide
whether [Texas Rule of Appellate Procedure 13.1] requires court reporters to
record all bench conferences whether or not such recording is requested.  If the rule does so require, it simply places
a party in the same position he would be in if recording of bench conferences
had been requested before trial. . . .

 

          The record does not
reflect that appellant made an objection to the court reporter’s failure to
record the bench conferences nor does appellant allege he made such an
objection at trial.  Therefore, appellant
has failed to preserve his complaint for appeal. 

 

Valle v. State, 109
S.W.3d 500, 508–09 (Tex. Crim. App. 2003); see
Velazquez v. State, 222 S.W.3d 551, 556–57 (Tex. App.—Houston [14th Dist.]
2007, no pet.).

          Appellant did not object to the court
reporter’s failure to record bench conferences. 
She contends, however, that she could not have objected to the lack of
recording at trial because the record “reveals no effort on the part of the
reporter to alert anyone that she intended to cease reporting these
conferences.  Likewise, nothing . . .
indicates that the reporter stood up and/or left the courtroom during
proceedings.”  But the Valle opinion does not create an
exception to the preservation requirement when the defendant’s counsel claims
that he or she did not know that bench conferences were not being recorded, and
appellant has not cited any authority supporting such an exception.  To the contrary, courts have rejected
arguments similar to the one made by appellant. 
See Peek v. State, No.
06-08-00069-CR, 2008 WL 5090344, at *2 (Tex. App.—Texarkana Dec. 4, 2008, no
pet.) (mem. op., not designated for publication); Velazquez, 222 S.W.3d at 556 n.4. 
Therefore, we hold that appellant failed to preserve her complaint about
recording bench conferences, and we overrule her third issue.  See
Tex. R. App. P. 33.1(a); Valle, 109
S.W.3d at 508–09; Velazquez, 222
S.W.3d at 556–57.

 

 

 

Conclusion

          Having overruled each of appellant’s
issues, we affirm the trial court’s judgment.

                    

                                                                             
 
 
 
 
 
 
 
 TERRIE LIVINGSTON

                                                                             
 
 
 CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

 

DAUPHINOT,
J. concurs without opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  October 28, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Health & Safety Code Ann. §
481.129(a)(5) (Vernon 2010).





[3]According
to testimony, Lortab is a pain medicine that contains codeine, acetaminophen,
and hydrocodone; hydrocodone is a controlled substance.





[4]Yang
said that she heard appellant tell the same baseball accident story.





[5]On
the same document that Porter says appellant signed, Porter wrote “mom” to
indicate that appellant had picked up the medicine for Austin, her son.





[6]When
Lund testified, she denied that she set up appellant and opined that appellant
has a poor character for being truthful.





[7]Specifically,
the trial court excluded testimony from a witness who would have established
that the driver of the car that Ray was in took a cocaine rock similar to one
that the police found and gave it to the witness just before Ray and the driver
of the car were stopped by police.  Id. at 835.





[8]We
note that none of the State’s witnesses testified that appellant used
hydrocodone.  





[9]During
the punishment portion of the trial, Lund testified that she refused to provide
her fingerprints to appellant’s counsel because her attorney believed that
there was no reason for her to do so.





[10]Rule
of civil procedure 192.3(b) defines “documents and tangible things” that may be
produced at a deposition to include “books, accounts, drawings, graphs, charts,
photographs, electronic or videotape recordings, data, and data
compilations.”  Tex. R. Civ. P.
192.3(b).  The rule does not specifically
allow or prohibit other physical evidence, such as fingerprints or DNA, to be
“produced” at a deposition.  Id. 
We do not express any opinion about whether fingerprints may generally
be required to be produced at a civil deposition.