Opinion issued January 5, 2012

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00376-CR

———————————

Karl Christopher Harris, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 176th District Court

Harris County, Texas



Trial Court Case No. 11237941

 



 

O P I N I O N

          A
jury convicted appellant, Karl Christopher Harris, of the second degree felony
offense of failure to comply with the sex offender registration requirements.[1]  After it found the allegations in an
enhancement paragraph true, the trial court assessed punishment at twenty
years’ confinement.  In three issues,
appellant contends that:  (1) the State did
not present sufficient evidence that he intentionally and knowingly failed to verify
his sex offender registration information within the required time period; (2)
the trial court improperly punished him for exercising his right to trial by ultimately
assessing punishment at twenty years’ confinement after previously offering, in
a pre-trial hearing, a sentence of four years’ confinement if appellant pleaded
guilty to the charged offense; and (3) he is entitled to a new trial
because the transcript of the pre-trial hearing at which the trial court made
its plea offer is unavailable.

          We
affirm.

Background

          In
1992, appellant pleaded guilty to the offenses of aggravated kidnapping with
the intent to violate or sexually abuse and aggravated sexual assault.  Appellant’s punishment was assessed at twelve
years’ confinement.  After appellant was
released from confinement in February 2004, he was required initially to register
as a sex offender with the Houston Police Department (“HPD”) and to verify his
registration information every ninety days for life.  See
Tex. Code Crim. Proc. Ann. art.
62.051(a) (Vernon Supp. 2011) (requiring any person with “reportable
conviction” to register with local law enforcement agency of municipality in
which person intends to reside for more than seven days), art. 62.058(a)
(Vernon 2006) (requiring person convicted of two or more “sexually violent
offenses” to verify registration information every ninety days).  Appellant initially registered with HPD on
February 26, 2004, and his last successful verification was on May 13, 2008.

          HPD
Officer J. Suarez, who works in the Juvenile Sex Offender Compliance Unit, was
assigned appellant’s case after appellant missed his scheduled verification
date in August 2008.  Officer Suarez
testified that an offender who is required to report for verification
quarterly, such as appellant, has a fifteen-day period during which he must
report to HPD.  He stated that during the
verification process, offenders complete an “update form,” notifying HPD of
whether they have changed jobs, phone numbers, vehicles, or home addresses.  When offenders verify their registration information,
they are given documentation of the successful verification and are told their
next verification date.  Officer Suarez
testified that when he verified his registration information on May 13, 2008,
appellant received a notification that his next scheduled verification date was
August 11, 2008.[2]

          Officer
Suarez also testified that when appellant initially began the registration and
verification process in 2004, the sex offender registration office was located on
the eleventh floor of HPD headquarters in downtown Houston.  In “May or June” of 2008, the office moved to
an HPD substation on Mykawa Road, and offenders were required to go to this
location for all future verification appointments.  Officer Suarez testified that the unit mailed
letters to all of the offenders within its jurisdiction notifying them of the
change in the office’s location.  He also
stated that HPD placed signs on the eleventh floor of the downtown station
notifying offenders of the move and that “officers at the [downtown] security
desk were informed of the change of address and were given letters for anybody
coming in so they would know the new address.” 
Officer Suarez stated that appellant failed to report during his August
2008 verification compliance period.  He
testified that it is the offender’s responsibility to report to HPD in person
to verify his registration information and that it is not HPD’s responsibility
“to go find [the offender] so they can report.”

          On
cross-examination, Officer Suarez testified that he could not provide the exact
date that the registration office relocated. 
He stated that appellant’s registration file did not indicate that
appellant was informed at his May 13, 2008 verification meeting that his August
verification meeting would occur at a different location.  He also testified that appellant’s file did
not contain either a copy of the letter that HPD sent to offenders informing
them of the office’s relocation or a “green card” reflecting that appellant
received the letter via certified mail.  Officer
Suarez also agreed with defense counsel that although signs were posted on the eleventh
floor in the downtown station, offenders were always escorted up to that floor
by an officer, and this would not have happened after the relocation occurred.

          HPD
Sergeant G.D. Kuschel, who was formerly in charge of the sex offender
compliance unit, testified that he initially registered appellant after his
release from confinement and informed appellant of his responsibility to verify
his registration information with HPD every ninety days for life and of the
consequences for failure to comply with the verification requirements.  Sergeant Kuschel testified that, five days
before the registration office actually moved, the office sent a letter to all
sex offenders “[e]xplaining that [the office was] transferring the obligation
of registration to the Juvenile Division at 8300 Mykawa Road.”  He stated that the office had approximately 1,500
letters to send, which is why the office did not use certified or registered mail.  He further stated that some of the letters
were returned to the office, and, if the office received a returned letter, the
office put the returned letter in the offender’s file.  Appellant’s file did not contain a returned
letter.  Sergeant Kuschel also testified
that if an offender arrived for verification at the downtown station after the relocation,
the officer working at the front desk would give the offender a copy of the
letter that had been mailed.  Sergeant
Kuschel personally observed front-desk personnel give these letters to
offenders who arrived at the downtown station. 
He stated that the front-desk personnel did not tell offenders that HPD
would contact them at a later date with details regarding the new location.  He also testified that offenders who called the
office were informed of the new location.

          On
cross-examination, Sergeant Kuschel agreed that appellant’s file did not
contain a copy of the letter that HPD mailed, and he stated that he could not
produce a copy of the letter for the jury. 
He further agreed that it was only after the office relocated that
appellant “had a problem reporting.”

          Billie
Jean Hopes, a civilian employee of HPD, testified that she worked in the sex
offender registration department and that she had verified appellant’s
registration information “from time to time,” including on May 13, 2008,
appellant’s last successful verification date. 
According to Hopes, the office had been planning to relocate for several
years, and she would occasionally let offenders know that the office would
eventually move to a new location.  She
could not remember if she told this to appellant when she met with him in
May.  She stated that, after the relocation,
she spoke with some offenders who originally reported to the downtown location
for verification but were given an “acknowledgement form” by the front-desk
personnel telling them to report to the new Mykawa location.[3]

          Appellant
testified on his own behalf.  He stated
that Hopes did not tell him at their May meeting that he should not report to
the downtown station for his August verification date.  He further testified that he never received
any type of notice from HPD regarding the office’s relocation.  He stated that he went to the downtown station
“around [August] 11th” and spoke with the front-desk officer, who swiped his
I.D. card and told him to wait.  After
appellant waited for about ten or fifteen minutes, he informed the front-desk
officer that he was there for sex offender registration.  The officer told him that registration and
verification no longer occurred at that station and that HPD would send him a
letter with the details of the new location. 
This officer did not tell him the address of the new location, just that
HPD would contact him at a later date.  Appellant
testified that, over the next few days, he made several attempts to call the
office and Sergeant Kuschel, but no one ever answered and he never received any
response.  He testified that he never
received any type of letter from HPD in the mail.  He stated that, although he attempted to verify
his registration information, he was unable to do so successfully because he
“didn’t know where to register” and he “was waiting until [he] got the physical
address to go register.”

          On
cross-examination, appellant acknowledged that he knew that he had to verify
his registration information every ninety days. 
Appellant did not remember either the exact date that he went to the
downtown station in August or the officer who was working at the front desk
when he visited.  He testified that he
only went to the downtown location once, and he never returned and asked to
speak to a sergeant or another officer about where he should go for
verification.  When asked what was
“holding [him] back” from going to the downtown station a second time to get
further information, appellant responded that he “was waiting on the letter.”

          The
trial court held a pre-trial hearing on October 16, 2009.  After the parties discussed plea bargain
negotiations and the fact that appellant had rejected the State’s offer of six
years’ confinement in exchange for a guilty plea, the trial court “strongly admonished”
appellant regarding “enhanced punishment range, strict liability, [and]
possible punishment evidence” and offered a sentence of four years’ confinement
in exchange for appellant’s guilty plea. 
Appellant rejected this offer as well, and he informed the court that he
wanted a jury trial.  He also elected, in
the event of a conviction, that the trial court assess punishment.  The State then re-indicted appellant and
added an enhancement paragraph.

          After
the jury found appellant guilty of the offense of failure to comply with the
sex offender registration requirements, the State presented evidence during the
punishment phase of the nature and circumstances of the two previous
“reportable convictions” that led to appellant’s duty to register.  During the punishment phase argument, defense
counsel requested that the court assess punishment “somewhere in the second
degree [felony] range, minimum two, maximum [twenty].”  The trial court found the allegations in the
enhancement paragraph true, and assessed punishment at twenty years’
confinement.  Defense counsel did not
object that this sentence was greater than the trial court’s earlier plea
offer, nor did he make any argument that the sentence was indicative of
judicial vindictiveness.

          While
this case was pending on appeal, appellant moved this Court to abate the appeal
because a portion of the reporter’s record, a transcript of the October 16,
2009 hearing, was missing.  We abated the
appeal and ordered the trial court to hold “any necessary hearings” relating to
the missing portion of the record.

          Wong
Lee, the substitute court reporter on October 16, 2009, submitted an affidavit to
the trial court stating that he did not record any proceedings in this case on
that date.  He averred, “The reporter’s
record was not lost or destroyed; it was never made.”  He acknowledged that the court’s docket sheet
for October 16, 2009, included the notation “(OTR Wong Lee),” which generally
indicates that the hearing was on the record, but he stated that these
notations can be “entered in error some time after the hearing is over.”  He unequivocally stated that neither he nor
any other court reporter recorded the October 16, 2009 hearing.

          Appellant’s
trial counsel also submitted an affidavit in which he stated that he knew a
court reporter was present for this hearing. 
He further averred:

I requested the court
reporter make a record of the October 16, 2009 hearing and the court reporter
was supposed to be recording the pre-trial hearing in [the prior cause number]
and I believe at the time of the hearing and I still believe today that the
court reporter was recording the pre-trial hearing in [the prior cause number]
on October 16, 2009.

 

He also opined that a record of the hearing would be
significant in determining appellant’s appeal.

          Pursuant
to our abatement order, the trial court held a hearing regarding the missing
record.  The court explained that its
practice is to hold a pretrial hearing at which the court hears probable cause,
discusses the potential punishment ranges with the defendant, and discusses any
plea bargain offers that have been made. 
The court noted that the docket sheet for October 16, 2009, stated “OTR
Wong Lee,” which is the court’s shorthand for “on the record.”  The trial court stated that its usual
practice is to conduct these hearings on the record, but, on this occasion, it was
possible that everyone assumed that Lee was recording the hearing, but the
court “may not have specifically told [Lee] that that’s what [the court wishes]
to do and he did not [record the hearing].”

          The
trial court specifically found Lee to be a credible person and that “based on
[Lee’s] affidavit and the way that he keeps records and the way the court
reporters keep records in general, there’s simply no substantiation for a claim
that there was a record made that was subsequently destroyed or disregarded or
that he intentionally didn’t take down the record.”  The court noted that this was not a situation
of the court refusing defense counsel’s request to have the hearing recorded,
but merely that the docket entry was wrong and “[f]or whatever reason [the
hearing] was not taken down.”

          The
trial court also stated that defense counsel did not make a request for the
October 16, 2009 hearing to be recorded and that every time the court holds
such a hearing, its policy is for the hearing to be on the record “at [its]
request.”  The court further noted that
defense counsel did not do anything “to block [the recording] from happening”
and stated its belief that nothing that happened in the hearing “has any
application whatsoever to any point on appeal.” 
The court concluded that because the record “was never created in the
first instance, then obviously it would not have been lost or destroyed.”

Sufficiency of Evidence

          In
his first issue, appellant contends that the State did not present sufficient
evidence that he intentionally and knowingly failed to verify his registration
information during his required verification period.

A.              
Standard of Review

When reviewing the sufficiency of
the evidence, we view the evidence in the light most favorable to the verdict
to determine whether any rational fact finder could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Brooks v. State, 323 S.W.3d 893, 912
(Tex. Crim. App. 2010).  The jurors are
the exclusive judges of the facts, the credibility of the witnesses, and the
weight to be given to the testimony.  Brooks, 323 S.W.3d at 899; Bartlett v. State, 270 S.W.3d 147, 150
(Tex. Crim. App. 2008).  A jury may
accept one version of the facts and reject another, and it may reject any part
of a witness’s testimony.  See Margraves v. State, 34 S.W.3d 912,
919 (Tex. Crim. App. 2000), overruled on
other grounds, Laster v. State,
275 S.W.3d 512 (Tex. Crim. App. 2009); see
also Henderson v. State, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.]
2000, pet. ref’d) (holding jury can choose to disbelieve witness even when
witness’s testimony is uncontradicted). 
We may not re-evaluate the weight and credibility of the evidence or
substitute our judgment for that of the fact finder.  Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We afford almost complete deference to the
jury’s determinations of credibility.  See Lancon v. State, 253 S.W.3d 699, 705
(Tex. Crim. App. 2008).  We resolve any
inconsistencies in the evidence in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); see also Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App.
2007) (“When the record supports conflicting inferences, we presume that the
factfinder resolved the conflicts in favor of the prosecution and therefore
defer to that determination.”).

B.              
Failure to Comply with Sex Offender
Registration Requirements

A person commits the offense
of failure to comply with sex offender registration requirements if he “is
required to register and fails to comply with any requirement of” Chapter 62 of
the Code of Criminal Procedure.  Tex. Code Crim. Proc. Ann. art.
62.102(a) (Vernon 2006); Green v. State,
350 S.W.3d 617, 621 (Tex. App.—Houston [14th Dist.] 2011, no pet. h.); Varnes v. State, 63 S.W.3d 824, 829
(Tex. App.—Houston [14th Dist.] 2001, no pet.) (“If a convicted sex offender
fails to meet any of his or her requirements under the statute, the statute
imposes criminal liability on him or her for that failure.”).  Article 62.051(a) requires a person with a
“reportable conviction” to register with “the local law enforcement authority
in any municipality where the person resides or intends to reside for more than
seven days.”  Tex. Code Crim. Proc. Ann. art. 62.051(a) (Vernon Supp.
2011).  A person who has been convicted
of two or more “sexually violent offenses” is required to register at least
once “in each 90-day period following the date the person first registered
under [Chapter 62] to verify the information in the registration form
maintained by the authority for that person.” 
Id. art. 62.058(a).  “[A] person complies with a requirement that
the person register within a 90-day period following a date if the person
registers at any time on or after the 83rd day following that date but before
the 98th day after that date.”  Id.

Generally, “[s]ince no state
of mind is specified for article 62 offenses, proof that the defendant acted
intentionally, knowingly, or recklessly is sufficient.”  Ford v.
State, 313 S.W.3d 434, 438 (Tex. App.—Waco 2010), rev’d on other grounds, 334 S.W.3d 230 (Tex. Crim. App. 2011); see also Tex. Penal Code Ann. § 6.02(c) (Vernon 2011) (providing
that, if definition of offense does not prescribe culpable mental state and one
is required, “intent, knowledge, or recklessness suffices to establish criminal
responsibility”).  When the indictment
alleges that a defendant “intentionally or knowingly” failed to register as a
sex offender, we review the record to determine if the State presented
sufficient evidence of the defendant’s intentional or knowing failure.  See
Ballard v. State, 149 S.W.3d 693, 695 & n.1 (Tex. App.—Austin 2004,
pet. ref’d) (conducting factual sufficiency review of whether defendant
intentionally or knowingly failed to register when indictment alleged these
culpable mental states); Varnes, 63
S.W.3d at 832 (“Although the sex offender registration statute does not
expressly require proof of a mental state for prosecution of a failure to
register, the indictment in this case alleged that Varnes intentionally and
knowingly failed to register.”).  “The
Texas courts which have reviewed other convictions under Chapter 62 for
sufficiency have treated the mens rea
requirement in the indictments or charges as going to the actual knowledge of
the defendant’s duty to register.”  Varnes, 63 S.W.3d at 832.

A person acts intentionally,
or with intent, with respect to the nature of his conduct or to a result of his
conduct when it is his conscious objective or desire to engage in the conduct
or cause the result.  Tex. Penal Code Ann. § 6.03(a)
(Vernon 2011).  A person acts knowingly,
or with knowledge, with respect to the nature of his conduct or to
circumstances surrounding his conduct when he is aware of the nature of his
conduct or that the circumstances exist. 
Id. § 6.03(b).  A person acts knowingly, or with knowledge,
with respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.  Id.

It is undisputed that
appellant was aware of his duty to verify his registration information every
ninety days and that he failed to successfully verify his information during his
August 2008 verification period. 
Appellant contends that the State did not present sufficient evidence
that he “intentionally and knowingly” failed to verify his registration
information because there is no evidence that he received notice that the
registration office had moved locations.

Officer Suarez, Sergeant
Kuschel, and Billie Jean Hopes all testified that the registration office
mailed a letter to all sex offenders within HPD’s jurisdiction that the office
was moving from the downtown location to a substation on Mykawa Road and that
all future verification meetings would occur at the Mykawa address.  Sergeant Kuschel testified that the office
did not use certified or registered mail to send the letters for cost reasons
and that some of the letters were returned to the office.  In these cases, the returned letters were
kept in the particular offender’s file.  Appellant’s
file did not contain a returned letter.

Officer Suarez, Sergeant
Kuschel, and Hopes also all testified that the officers who worked the security
desk at the downtown station after the registration office relocated were
informed of the relocation and were given copies of the letters that had been
mailed to distribute to any offenders who mistakenly arrived at the downtown station
for verification.  Sergeant Kuschel
testified that he personally observed front-desk personnel at the downtown station
give a copy of the letter to an offender who appeared downtown for verification
and that the front-desk personnel did not inform offenders that HPD would
contact them at a later date regarding the new location.  Hopes testified that, after the office’s relocation,
she spoke with an offender who originally reported to the downtown location for
verification, and he presented a copy of the letter that he received from the
officer working at the front desk.  Sergeant
Kuschel also testified that any offenders who called the office requesting
information about the relocation were told the office’s new location.

Appellant testified that he
never received any notice or letter from HPD informing him of the new location
of the registration office.  He further
testified that he went to the downtown location “around [August] 11th” to
verify his registration information, and, after he told the officer working at the
front desk why he was there, he was informed that the registration office had
moved.  He testified that this officer
did not give him a copy of a letter and did not tell him the new location of
the office; rather, this officer only told him that HPD would mail him a letter
containing the new office information.  He
also stated that he called the registration office and Sergeant Kuschel on
several occasions, but no one ever answered his calls and he never received a
response.

Faced with this conflicting
testimony, the jury, as the fact finder, could have chosen to believe the
testimony of Officer Suarez, Sergeant Kuschel, and Hopes over appellant’s
account of events.  See Brooks, 323 S.W.3d at 899 (noting that jury is sole judge of
witnesses’ credibility and weight to be given to their testimony); Bartlett, 270 S.W.3d at 150 (noting that
jury is “exclusive judge of the facts proved”); Rodriguez v. State, 45 S.W.3d 685, 688 (Tex. App.—Fort Worth 2001)
(holding, in failure to comply with sex offender registration requirements
case, that “the jury chose not to believe Appellant’s testimony, which was
within its discretion”), aff’d, 93
S.W.3d 60 (Tex. Crim. App. 2002).  We
defer to the jury’s determinations of credibility and resolve all
inconsistencies in the evidence in favor of the verdict.  See
Lancon, 253 S.W.3d at 705; Curry,
30 S.W.3d at 406.

We therefore hold that, when
viewing the evidence in the light most favorable to the verdict, a rational
jury could have found beyond a reasonable doubt that appellant had notice of
the new registration location and that he intentionally and knowingly failed to
verify his registration information, in violation of the sex offender
registration requirements.

We overrule appellant’s
first issue.

Judicial Vindictiveness

          In
his second issue, appellant contends that the trial court improperly punished
him for exercising his right to a jury trial when it made a pre-trial plea offer
of four years’ confinement in exchange for his guilty plea but then ultimately
assessed punishment at twenty years’ confinement.  The State responds that appellant did not
preserve this complaint for appellate review because he failed to raise the
issue of judicial vindictiveness or otherwise object to his sentence at the
time the trial court assessed punishment. 
We agree with the State.

          To
preserve a complaint for appellate review, the complaining party must make a
timely request, objection, or motion that states the grounds for the ruling
sought with sufficient specificity to make the trial court aware of the
complaint.  Tex. R. App. P. 33.1(a)(1)(A).  In Neal
v. State, the Court of Criminal Appeals held that the defendant failed to
preserve his claim of prosecutorial vindictiveness for appellate review when
the defendant did not raise this issue in a pre-trial written motion or
otherwise assert his claim before the trial court.  See
150 S.W.3d 169, 180 (Tex. Crim. App. 2004) (“Because appellant never presented
his prosecutorial vindictiveness claim in the trial court, he failed to
preserve this issue for appellate review.”).

          Here,
the trial court made a pre-trial plea offer of four years’ confinement in
exchange for appellant’s guilty plea.[4]  Appellant rejected this offer, expressed his
desire to proceed to a jury trial, and elected that the trial court assess
punishment in the event of a conviction. 
After the jury convicted appellant, the trial court heard testimony
during the punishment phase from the victim of his reportable sex offenses.  During argument, defense counsel stated,
“[W]e’re asking the Court to assess punishment in this case somewhere in the
second degree [felony] range, minimum two, maximum [twenty].”  The trial court ultimately assessed
punishment at twenty years’ confinement. 
Appellant did not:  (1) object to
this sentence; (2) give any reason why this sentence should not be pronounced
against him; (3) argue that the trial court could not assess this sentence
because it had made a previous plea offer of four years’ confinement; or (4) otherwise
raise a claim of judicial vindictiveness at any point before the trial court.

          We
follow the rationale of Neal and
conclude that, to preserve his complaint for appellate review, appellant was
required to raise his claim of judicial vindictiveness before the trial court
by timely request, objection, or motion.[5]  See
id.; see also Tex. R. App. P.
33.1(a)(1)(A).  We hold that because
appellant did not raise his claim of judicial vindictiveness before the trial
court or otherwise object to the trial court’s sentence, appellant failed to
preserve this complaint for appellate review.

          We
overrule appellant’s second issue.[6]

 

 

Failure to Record Pre-Trial Hearing

Finally, in his third issue,
appellant contends that he is entitled to a new trial because a “significant
portion of the trial court transcript”—the October 16, 2009 hearing during which the trial court made its plea
offer to appellant—is
unavailable, and “the absent record of the trial court’s plea offer affects and
hinders appellate review of Appellant’s judicial vindictiveness complaint.”

Government Code section 52.046
requires an official court reporter, on request, to attend all sessions of
court and furnish a transcript of the reported evidence or other
proceedings.  Tex. Gov’t Code Ann. § 52.046(a) (Vernon 2005).  The Court of Criminal Appeals has held that a
defendant must object to the court reporter’s failure to record a portion of
the trial proceedings to preserve error. 
See Valle v. State, 109 S.W.3d
500, 508–09 (Tex. Crim. App. 2003); Velazquez
v. State, 222 S.W.3d 551, 556–57 (Tex. App.—Houston [14th Dist.] 2007, no
pet.) (holding that complaint that court reporter failed to record bench
conferences was not preserved for appellate review because defendant did not
object to lack of court reporter’s presence at conferences).

Here, although appellant did not
object to the court reporter’s failure to record the October 16, 2009 hearing,
the record reflects that, until the trial court reviewed the court reporter’s
affidavit in preparation for the abatement hearing, both the trial court and trial
counsel believed that the court reporter had recorded the October 16, 2009
hearing.  In his affidavit, trial counsel
stated his continuing belief that the court reporter had recorded the hearing.

Appellant urges us to analyze this
complaint under Texas Rule of Appellate Procedure 34.6(f), which provides that
an appellant is entitled to a new trial when a reporter’s record is either lost
or destroyed and certain other circumstances are present.  See
Tex. R. App. P. 34.6(f).  Under this rule, an appellant is entitled to
a new trial due to a lost or destroyed reporter’s record when:  (1) the appellant timely requested a
reporter’s record; (2) without the appellant’s fault, a significant portion of
the reporter’s notes, records, or electronic recordings have been lost or destroyed;
(3) the lost or destroyed portion is necessary to the appeal’s resolution; and
(4) the lost or destroyed portion cannot be replaced by agreement of the
parties.  Id.  Appellant alternatively
argues that, if we do not apply Rule 34.6(f), we should analyze the court
reporter’s failure as constitutional error under Texas Rule of Appellate
Procedure 44.2(a) “because the type of error purportedly unavailable for
appellate review involves judicial vindictiveness,” which “represents
structural error and requires automatic reversal.”  If the error at issue is constitutional in
nature, we must reverse a judgment of punishment unless we determine beyond a
reasonable doubt that the error did not contribute to the punishment
assessed.  Tex. R. App. P. 44.2(a). 
We disregard all non-constitutional errors that do not affect an
appellant’s substantive rights.  Tex. R. App. P. 44.2(b).

At the abatement hearing, the trial
court expressly found that no record of the October 16, 2009 hearing had ever
been created, and, thus, because the record had never been created in the first
place, it could not have been lost or destroyed.  Regardless of whether we analyze this issue
under Rule 34.6(f) and regardless of which harm standard pursuant to Rule 44.2
we apply, appellant cannot demonstrate his entitlement to relief.  To receive a new trial under Rule 34.6(f),
appellant must demonstrate that the missing portion of the record is “necessary
to the appeal’s resolution.”  See Tex.
R. App. P. 34.6(f).  Appellant
argues that this record is necessary to the resolution of his appeal because
the trial court discussed its four-year plea bargain offer at this hearing, and
“[t]here can be little question that the trial court’s discussions about her
four year plea offer would shed light on Appellant’s judicial vindictiveness
complaint.”  As we have already held,
however, appellant failed to preserve his judicial vindictiveness complaint for
appellate review, and, even if he had preserved his complaint, the judicial
vindictiveness doctrine is inapplicable to this case.  The relevant portion of the record for
determining this issue is the record of the punishment phase of the trial, during
which the trial court made its sentencing decision by assessing punishment at
twenty years’ confinement and defense counsel did not object to this sentence
or assert a claim of vindictiveness. 
This portion of the record is available. 
The record of the October 16, 2009 hearing, during which the trial court
made its plea offer, is not necessary to resolving appellant’s issues on appeal.

Because we decide appellant’s
vindictiveness issue based on the record of the punishment hearing, and the
record of the October 16, 2009 hearing is not necessary to our determination
that the vindictiveness issue was not preserved, we conclude that appellant is
not entitled to reversal under the “lost or destroyed” record provision of Rule
36.4(f) or under either of the harm standards of Rule 44.2.

We overrule appellant’s third
issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Massengale.

Publish.  Tex.
R. App. P. 47.2(b).











[1]
          See Tex. Code Crim. Proc.
Ann. art. 62.102(b)(3) (Vernon 2006).





[2]
          Officer Suarez testified that
appellant’s actual verification date was August 20, 2008, which was calculated
using his birth date, and that he was allowed a seven-day grace period before
and after that date.  Thus, appellant’s
August 2008 verification compliance period was from August 13, 2008, to August
27, 2008.  Officer Suarez testified that
if the registration office does not have any times available for verification
meetings during an offender’s compliance period, it might schedule an
offender’s next verification meeting outside the period, which is why
appellant’s scheduled date was August 11, 2008.





[3]
          Hopes testified that these
“acknowledgment forms” were also used when, for example, offenders attempted to
report at a time when the office was closed. 
The front-desk personnel would complete the form, which would then be
placed in the offender’s file.  Appellant’s
file did not contain an “acknowledgment form” reflecting that he attempted to
register at the downtown location in August 2008.





[4]
          Although appellant does not
specifically complain about the propriety of the trial court’s plea offer to
him, we note that the Court of Criminal Appeals has discouraged this
practice.  In Perkins v. Third Court of Appeals, the Court of Criminal Appeals
stated, “Although Texas trial judges are not expressly prohibited by statute or
any rule of law from participating in a plea bargaining session, this Court has
nevertheless suggested that a trial judge should not participate in any plea
bargain agreement discussions until an agreement has been reached between the
prosecutor and the defendant.”  738
S.W.2d 276, 282 (Tex. Crim. App. 1987) (citing Ex parte Williams, 704 S.W.2d 773, 777 n.6 (Tex. Crim. App.
1986)).  The court rationalized that “the
trial judge should always avoid the appearance of any judicial coercion or
prejudgment of the defendant since such influence might affect the
voluntariness of the defendant’s plea.”  Id.; Jennings
v. State, 754 S.W.2d 389, 391 (Tex. App.—Houston [1st Dist.] 1988, pet.
ref’d) (“We agree with the language discouraging judicial involvement in plea
negotiations in Texas Court of Criminal Appeals cases relied on by
appellant.”).  Although the issue of
whether the trial court erred in making a plea offer to appellant is not before
us, our opinion in this case should not be read as approving of the trial
court’s actions in making this offer.





[5]           In two unpublished memorandum opinions, the Tyler
Court of Appeals and the Texarkana Court of Appeals applied the reasoning of Neal to claims of judicial
vindictiveness and held that, to preserve error, a defendant must raise the
issue of judicial vindictiveness before the trial court.  See
Thomas v. State, No. 12-07-00048-CR, 2007 WL 4216459, at *2 (Tex.
App.—Tyler Nov. 30, 2007, no pet.) (mem. op., not designated for publication); Rosborough v. State, No. 06-06-00237-CR,
2007 WL 2033762, at *2 (Tex. App.—Texarkana July 17, 2007, no pet.) (mem. op.,
not designated for publication).  Both
courts concluded that, although the issue was judicial vindictiveness instead
of prosecutorial vindictiveness, there was “no reason that an allegation of
judicial vindictiveness should not also require the same preservation of error
as does an allegation of prosecutorial vindictiveness.”  Rosborough,
2007 WL 2033762, at *2; see also Thomas,
2007 WL 4216459, at *2 (“Although Appellant’s complaint is of vindictiveness by
the trial court rather than the prosecutor, we see no reason why [Texas] Rule
[of Appellate Procedure] 33.1(a) would not apply.”).  In both Thomas
and Rosborough, the issue was whether
the trial court acted in a vindictive manner by improperly ordering sentences
for multiple offenses to be served consecutively, rather than concurrently.  See
Thomas, 2007 WL 4216459, at *1; Rosborough,
2007 WL 2033762, at *1.  Both courts held
that because the defendants did not raise the issue of vindictiveness at the
sentencing hearing, did not object to the trial court’s order that the sentences
be served consecutively, and did not suggest to the trial court that it was
violating due process by its order, the defendants failed to preserve the issue
for appellate review.  See Thomas, 2007 WL 4216459, at *2; Rosborough, 2007 WL 2033762, at *2.

 





[6]
          Moreover, even if appellant had
preserved this complaint, we agree with the State that the presumption
established in North Carolina v. Pearce
is not applicable to this case.  In Pearce, the United States Supreme Court
concluded that “whenever a judge imposes a more severe sentence upon a
defendant after a new trial, the reasons for his doing so must affirmatively
appear [in the record].”  395 U.S. 711,
726, 89 S. Ct. 2072, 2081 (1969), overruled
in part by Alabama v. Smith, 490 U.S. 794, 801, 109 S. Ct. 2201, 2205
(1989) (holding that Pearce
presumption of judicial vindictiveness does not apply when trial judge imposes
greater penalty after remand and full trial than was imposed after prior guilty
plea).  We have recognized that the Pearce presumption of judicial
vindictiveness applies “in cases where judges assess harsher sentences after retrial following successful appeal.”  Wilson
v. State, 810 S.W.2d 807, 810 (Tex. App.—Houston [1st Dist.] 1991, no pet.)
(emphasis added).  Here, the trial
court’s decision to assess punishment at twenty years’ confinement is the
original sentence in this case, made after the State re-indicted appellant and
added an enhancement paragraph and after the trial court heard relevant
evidence during the punishment phase of the trial.  There has been no “new trial” after a
successful appeal.  Thus, appellant
cannot demonstrate that the trial court was “vindictive” in imposing its
sentence.  See
Thomas, 2007 WL 4216459, at *3 (“Here, there is no ‘new trial’ and, therefore,
Appellant cannot show that the trial court was vindictive when it ordered that
her sentences be served consecutively.”); Rosborough,
2007 WL 2033762, at *2 (“Here, there has not been a ‘new trial’; this appeal
arises from the first and only trial of the instant case.  Therefore, there can be no showing that the
trial court was vindictive when imposing the complained-of sentence.”).